WAGNER v. MYERS.

1. APPEAL AND ERROR—CLAIM OF APPEAL.

Review is had as of decree entered, rather than as of denial of motion for rehearing as stated in claim of appeal, where appellant asserted that, through mistake or inadvertence of attorneys, the claim of appeal misstated the purport of the appeal and appellees have not controverted the assertion during the 5-year period which has elapsed since appellant's brief was filed.

2. STIPULATIONS—MISTAKE—BURDEN OF PROOF.

A party who claims that stipulation, entered into in open court, was based upon a mistake of fact, carries a heavy burden of persuasion, since every presumption of judicial care, and of professional competence, and of decretal stability is against the overthrow, in the appellate court, of such stipulation and of orders and decrees based thereon.

3. DEEDS—CONSENT DECREE—STIPULATIONS—ATTORNEY AND CLIENT.

Consent decree in suit by mother against youngest daughter, who had taken care of plaintiff for some years, to set aside deed creating a joint tenancy between plaintiff and defendant, after care of mother had been transferred to other children, whereby plaintiff was to pay a sum of money to defendant, entered pursuant to stipulation agreed to in open court and after trial judge had a conference with plaintiff, is affirmed, where authority of counsel to act for defendant is not impeached and his action has been ratified by defendant.

4. APPEAL AND ERROR—CONSENT DECREE.

An attack upon consent decree by substituted counsel on appeal comes too late, where such decree was entered by trial court after stipulation in open court and after trial court had had a sickroom conference with elderly plaintiff who sought to set aside deed to defendant-appellant.

---

REFERENCES FOR POINTS IN HEADNOTES

[1] 3 Am Jur, Appeal and Error § 812.
[2] 50 Am Jur, Stipulations § 14.
[3] 5 Am Jur, Attorneys at Law § 91.
[5] 14 Am Jur, Costs § 96.

5. Costs—Briefs.

  No costs are allowed appellee upon affirmance of decree, where no brief was filed on her behalf.

Appeal from Cass; McDonald (Archie D.), J., presiding. Submitted October 10, 1958. (Docket No. 40, Calendar No. 45,911.) Decided January 12, 1959.

Bill by Florence Wagner against Margaret Myers to set aside deeds. Decree for plaintiff based upon written settlement agreement. Defendant appeals. Affirmed.

*Gore & Williams (Charles W. Gore,* of counsel), for defendant.

Smith, J. This case involves the setting aside of deeds of conveyance. Appeal is from a decree so doing.

The decree here attacked was entered pursuant to "an agreement by stipulation of the parties" reached upon trial date after day-long negotiations. Substituted counsel for defendant-appellant urge to us primarily (as they urged the trial chancellor upon motion for rehearing) that the decree is based upon a mistake of fact. This is the ground upon which our opinion will turn. Some review of the factual background, however, is essential to an understanding of the context in which this issue arose.

Margaret Myers, defendant, is the daughter of Florence Wagner, plaintiff-appellee.* Margaret, we are told, was the youngest of 4 children. Upon her, as the years passed, largely devolved the care of her mother, for, although Margaret did at one time marry, the venture was not successful and she later resumed her mother's care. In the year 1948 Mrs. Wagner suffered a paralytic stroke, and her condi-

---

* Subsequent to submission of this case the parties suggested the death of plaintiff Florence Wagner and stipulated that Jerry J. O'Connor, the administrator of her estate, be substituted as party plaintiff.

tion thereafter gradually worsened. She was finally sent to a sanitarium, following which she was removed to the home of a son, Floyd, under special guardianship, in which home she resided at the time of the filing of the bill of complaint.

The bill was filed by the mother to set aside the deeds which had created a joint tenancy with Margaret in certain property. The bill alleged various coercive iniquities on Margaret's part. Margaret's answer denied all and charged, in turn, acts of a similar character on the part of "her brothers and sisters to gain physical control of her mother and to influence her to act contrary to her true desires." There is no need to amplify the voluminous and bit-.ter charges and countercharges made in this unhappy family.

When the case came on for trial before Judge McDonald he suggested that the parties sit down together and attempt to "work it out." He pointed out that upon a bill to set aside a deed it is either set aside or it is not, this resulting in a total loss for one party or the other. He further stated that if the differences could not be adjusted the case would be tried "as fairly and [as] best I can." Thus abjured, the parties retired. After some difficulties, and towards the end of the day, the court was reconvened and the following statement made upon the record by the now-replaced counsel for defendant.

"*Mr. Sproull:* May it please the court, we have arrived at an agreement by stipulation of the parties. If you care to have me do so I would put my client on the stand and read from the stipulation and I will question her about it and you may if you care to do so.

"*The Court:* You may question her about it."

Defendant thereupon testified that she had read and understood the agreement which was summarized, in part, by opposing counsel in the following terms:

*"Mr. Pollock:* Going to the substance of the agreement, most everything has been indicated here. There is a further provision that this $1,500 be paid within 60 days, and also the terms that the personal property be delivered up within 2 months or 60 days, in as good condition as they now are. Further, that neither party will tax costs, each will pay costs and attorneys. Of course, that is embodied in the agreement which will be in the file."

The court thereupon asked defendant, "You think you understand this, do you?" to which she replied, "Yes, I understand this. I understand, also, there is a provision for me to see my mother." It is this last statement which forms the basis for the charge of mistake. We shall examine it in detail.

Margaret, the defendant, who had made this statement, had charged in her pleadings that the mother was "held prisoner by Floyd and Esther Wagner," that "the allegations in paragraph 15 of the plaintiff's bill of complaint" (that the mother wanted the property restored to her) did not represent "the true intention of her mother," and that "it was not her mother's idea or her mother's desire to so serve her." In short, that it was not the action of her mother at all, but that of the brothers and sisters. Subsequent to the agreement reached, described *supra,* Margaret asserted that her inducement for entering into the agreement had been the assurance that she would have the right to visit her mother and that this had been denied to her. In opposition it was denied that there had been any inducement concerning visitation but that, nevertheless, visitation had been permitted with the result that defendant, in so visiting, "caused plaintiff to be nervous by her continued insistence in discussing this case" and for the purpose of influencing plaintiff "to retreat from and abandon the agreement and stipulation heretofore entered into." The crux of the visitation issue, it is clear, had to

do not with family amenities but with the settlement of the legal action and the issue of the mother's knowledge (or lack of knowledge) thereof. This is apparent from the statement of defendant's counsel at the hearing to settle the decree, held upon November 16th, that "We move the Court at this time to allow, as we stated, to determine that the plaintiff in the lawsuit also understands the decree and the terms and knows what the suit is all about." (Defendant's affidavit filed in support of her petition for rehearing is equally clear. The stipulation, it is said—

"was not to be of any force or effect until the defendant visited her mother, the said Florence Wagner, to determine whether or not the terms and provisions of the stipulation heretofore referred to, were agreeable to the said plaintiff, Florence Wagner, and were in accordance with the desires of the said plaintiff.")

The issue of the mother's personal knowledge of the agreement, despite her counsels' acquiescence, having thus been raised, the chancellor went directly to the heart of the issue in the following terms:

"Well, Mr. Sproull, the court appreciates your position and, of course, we have already had conferences in the conference room, which the clients probably know, and we have discussed this somewhat in detail. We are making a record now.

"Now I am going up to see the mother. I understand she isn't very well. Normally, the opposite side of a case hasn't very much to say about whether the other side understands the case. She here is represented by competent counsel, as is the defendant in the case. However, I will go up and talk to her. I think this is true about this case; I may have more to say about it today. * * * If someone will take me up to the house I will visit with her and have some further comments."

Upon the chancellor's return we find the following in the record:

*"The Court:* Court is in session. I have just come from the home of Mrs. Wagner and I must have been in the house close to 30 minutes, and there isn't any question in my mind whatsoever but what she understands what is going on here. Her mind is just as clear as any person's mind of that age.   *   *   *

"Now I am going to sign this decree, and while it has nothing to do with visitation I think if the daughter went in once a week and stayed about a half hour—let her cry for a few minutes, she is going to—don't do anything to cause excitement—it should be a very pleasant half hour. She has an excellent lady there now taking care of her. I think if this agreement is complied with at once it would help the situation a lot. I am satisfied there will not be any trouble over visitations if everybody conducts themselves as they should, without looking for trouble. Any questions? Anything anyone wants to say?"

The decree was thereupon entered. Appeal followed. With respect to it defendant states that, "Through mistake or inadvertence in the office of the attorneys for the appellant, the claim of appeal purports to appeal from the denial of the motion 'for a new trial' (rehearing). It was intended to be a claim of appeal from the decree. We request the court to consider it as such." No opposition having been made thereto in the time, approximately 5 years, that appellant's brief has been on file in this Court (the record has been here since 1952), and no reason inimical thereto appearing from the facts or record before us, it will be so treated.

Appellant urges upon appeal that "the stipulation was not to become effective nor binding on any of the parties until such time as the appellant had discussed the contents of the stipulation and the settlement proposed, with her mother, in order to deter-

mine whether or not the mother consented to the settlement," or, to put it more shortly, that the decree is based upon a mistake of. fact. The litigant who so asserts to a stipulation freely entered into in open court carries a heavy burden of persuasion. Every presumption of judicial care, of professional competence, and of decretal stability is against the overthrow, in the appellate court, of such stipulation and of orders and decrees based thereon. In the case before us enough has been quoted of the record to demonstrate that the matter of visitation, so far as it was relevant, was thoroughly explored by all parties to this action and we are in full agreement with the following. ruling of the trial chancellor made subsequent to the motion for rehearing:

"After a review of the proceedings, the court is of the opinion that both parties understood the nature of the agreement, and further that the question of visits was not a part of the settlement agreement although efforts were directed in that direction to make reasonable visits possible, which arrangements were made, and it would appear that the defendant may see the plaintiff at all reasonable times."

It is also argued to us as follows:

"We submit that the decree was entered without any competent testimony sustaining the allegations of the bill of complaint. This was an action to set aside a deed. It would have been proper for the parties to have settled the matter by a written contract and the execution of deeds. However, there being no valid agreement between the appellee and the appellant, it would be necessary to sustain the allegations of the bill of complaint by competent proof before a decree would be binding on either party. A contract between the parties compromising their differences would be valid. The decree entered without the consent of the appellee would be invalid.

"We further insist that the statute and rules of court require testimony to sustain a decree in chancery, or, in the absence of such testimony that the decree should be entered only by the express authority, direction and consent of both parties to the lawsuit."

The difficulty with this argument is that the decree was entered pursuant to an agreement between the parties, entered into with a full understanding thereof and acquiescence therein. The authority of counsel to act for client, so basic to our procedures, has not been impeached in any way, but was, in fact, expressly ratified by plaintiff herself in her affidavit in opposition to motion for rehearing wherein she asserted her knowledge of the agreement, and her approval thereof. Thus the decree has, in fact, been entered "by the express authority, direction and consent of both parties to the lawsuit." Plaintiff's approval of the agreement, as expressed, was merely confirmatory of the statement placed in the record by the chancellor upon his return from a conference with plaintiff on November 16th, when the question of her understanding was raised in court. Although as a matter of good practice we should have preferred that the sickroom conference between the chancellor and plaintiff had been made a matter of stenographic record, nevertheless at the trial level there was full agreement with the procedure taken and attack thereon by substituted counsel in this Court comes too late. *Cf., Rea* v. *Rea,* 195 Or 252 (245 P2d 884, 35 ALR2d 612); *Davey* v. *Ikle,* 348 Mich 64.

The remaining assignments of error are necessarily ruled by what has been said. The decree is affirmed. No costs, appellee having filed no brief.

DETHMERS, C. J., and CARR, KELLY, BLACK, EDWARDS, VOELKER, and KAVANAGH, JJ., concurred.