## EDWIN SCHOENFELD v. DOROTHY BUKER AND ANOTHER.

114 N. W. (2d) 560.

March 9, 1962—No. 38,207.

*Blethen, Ogle, Gage & Krause,* for appellant.
*Harold J. Carroll* and *Frank X. Cronan,* for respondents.

NELSON, JUSTICE.

This is an appeal by Edwin Schoenfeld from an order denying a motion to set aside a stipulation of dismissal, for leave to amend his complaint, and to have the cause reinstated on the trial calendar.

Following an automobile accident on October 29, 1955, suits were instituted against appellant as follows:

(a)   Rachel Buker v. Edwin Schoenfeld, Dorothy Buker, and Edwin Buker;

(b)   Loren Buker v. Edwin Schoenfeld, Dorothy Buker, and Edwin Buker;

(c)   Dorothy Buker and Gerald Buker v. Edwin Schoenfeld;

(d)   Edwin Buker v. Edwin Schoenfeld.

This appeal, however, involves an action by Edwin Schoenfeld against Dorothy Buker and Edwin Buker arising out of the same automobile accident.

The trial of the actions brought by Rachel and Loren Buker was commenced in the District Court of Waseca County on October 18, 1956. Negotiations for settlement got under way during the course of the trial and as a result, on October 22, the five cases, including the one here on appeal, were settled and disposed of by stipulation of dismissal in the following form:

124

"It is hereby stipulated that the above entitled action, having been completely and fully compromised and settled, may be and hereby is dismissed on its merits with prejudice but without costs to either party; and the clerk of said court, upon the filing of this stipulation, is hereby authorized and directed to so dismiss said action of record.

"Dated at Waseca Minn, the 22nd day of October. 56.

"/s/ Edwin Schoenfeld
/s/ H. J. Tschohl
Attorney for Plaintiff
/s/ Harold J. Carroll
Attorney for Defendant"

The release, signed by appellant in the presence of attorneys for his insurance company as well as his personal counsel, H. J. Tschohl, reads as follows:

"For valuable considerations, including contributions on behalf of Dorothy Buker and Edwin Buker, in cases against me, the receipt of which is hereby acknowledged, I do hereby release and forever discharge Dorothy Buker and Edwin Buker from all claims, demands and right of action whatsoever, which I ever had, which I now have or can have on account of injury or injuries both known and unknown to person, damage to property, loss of services and medical expense sustained by me, or which may hereafter arise, in consequence of an accident which occurred on or about the 29 day of October 1955 at or near Waseca, Minnesota

"It is agreed that the payment of the above sum is not to be construed as an admission by or on behalf of the above named party of any liability whatsoever on account of said accident, and the above sum is accepted in full satisfaction of all claims arising from the above mentioned accident.

"Executed at Waseca, Minnesota this 22 day of October 1956

"/s/ Edwin Schoenfeld

"In the presence of
/s/ W. W. Laidlaw
/s/ H. J. Tschohl
/s/ Edward J. Callahan, Jr."

The compromise and settlement was forthwith approved by the trial court with all parties represented by their counsel.

The accident occurred at the intersection of St. Mary's Township Road and State Aid Road No. 9 about 3 miles from Waseca. Appellant was the driver of his automobile, and Dorothy Buker was the driver of the other automobile involved, which was owned by Edwin Buker. Rachel Buker, the wife of Loren Buker, was a passenger in the automobile driven by Dorothy Buker. Gerald Buker is the husband of Dorothy Buker. The intersection was uncontrolled, with the directional right-of-way in favor of defendant Dorothy Buker. The two automobiles collided at some point in the intersection resulting in injuries to both drivers and Rachel Buker.

Dr. S. T. Normann, a physician practicing in Waseca, was called and arrived shortly after the accident. He found that appellant was hanging out of the right front door of his car with his head and shoulders on the ground and his legs caught inside the car. He had received a head injury, was comatose, and responded only slightly to stimulation. Upon arrival at the hospital it was found he had, besides the head injury, a bruise of the right temple, a small laceration at the middle of the forehead, and a laceration of the right side of the lower lip. Both of his knees were bruised and he also had multiple body bruises. X-rays of the skull were taken and found to be negative. He remained in a state of coma for approximately one week and was discharged from the hospital November 17, 1955. It also appears that due to a concussion he suffered amnesia for a period of time after the accident. In his affidavit he states that he does not remember any events from the time of the accident until December 25, 1955.

The record indicates that on November 25, 1955, appellant was examined by Dr. Siegfried C. G. Oeljen of Waseca, an eye specialist. Dr. Oeljen had previously treated appellant following a gunshot wound causing injury to his right eye. Removal of that eye became necessary, but the record indicates that no involvement of the left eye took place at the time. The results of the examination by Dr. Oeljen on November 25 were negative except that there were a few vitreous floaters in the left eye. A refraction was done at the time. With glasses his vision was 20/20. Later, on March 19, 1957, Schoenfeld again consulted Dr.

Oeljen and it was found that his vision had decreased to 20/60 and that the fundus of the eye now showed many vitreous floaters present.

Treatment was prescribed but his condition did not respond after several weeks and Dr. Oeljen promptly sent him to the Mayo Clinic. The condition in his eye was diagnosed there as a perivasculitis with scar tissue manifestation in the retina. A small arc of retinal detachment was present. Treatment was continued over a period of several months, during which time his vision improved to 20/40. While driving his tractor on August 28, 1958, he received a sudden jar when the tractor hit a bump and he experienced a drop in his vision to a point where he was able only to count fingers at 3 feet. Dr. Oeljen stated that he believes that appellant received injuries in the accident of October 29, 1955, causing an inflammatory process to start which gradually led to more and more scar tissue formation within the eye and which has gradually caused a detachment of the retina with resulting blindness.

Appellant carried a policy of automobile insurance with the Minnesota Mutual Fire & Casualty Insurance Company which provided for a $20,000 limit of liability for each person and a $40,000 limit for each accident. Two letters sent to appellant by the attorney for his insurance company stated that it was the insurer's purpose to inform him of his rights under the policy so that he might, if he desired, retain independent counsel to protect himself from personal exposure above the policy limits. Insurance counsel in both letters stated that he would be willing to associate and cooperate with such counsel, but each letter contained the further statement that:

"If I have not heard from you or if the company has not heard from you we will then assume that you do not wish to be represented for the excess over the policy limits."

The first letter informed him that the suits brought against him by Rachel Buker and Loren Buker were considered as one so that his limit of protection against them would be $20,000 although the aggregate amount demanded by the plaintiffs totalled $80,000. The other letter, written after Dorothy and Gerald Buker had instituted their action, pointed out that they also demanded damages in excess of

$20,000, the limit of coverage for the claims asserted in that action.

Appellant was advised that under a compromise and settlement he would escape the danger of having a judgment entered against him in excess of his policy limits, and he knew that in consideration of such benefits he would have to release his claim for damages.

The record indicates that appellant was well aware of the fact that the Buker car had the directional right-of-way. A reading of the record leads to the conclusion that plaintiff's own insurance carrier and its attorney, as well as his own personal counsel, in their evaluation of the probable liability in view of the circumstances of the accident believed that the primary responsibility was appellant's. This conclusion is supported by the fact that his personal attorney joined in signing the stipulation.

Following the accident, appellant retained H. J. Tschohl, an attorney in Mankato, to represent him on any claim he might have. Mr. Tschohl had previously conducted an investigation for appellant's insurance company, but Walter L. Laidlaw, a Minneapolis attorney, became the attorney for the insurance company, Mr. Tschohl representing appellant as his personal counsel.

The settlement of the claims was on the following basis:

(a) To Rachel and Loren Buker, $35,000 of which $17,500 was raised by contribution from appellant and $17,500 from Dorothy and Edwin Buker;

(b) To Dorothy and Gerald Buker, $1,025 paid by appellant;

(c) Edwin Buker, $600 paid by appellant.

Appellant contends that the trial court erred in denying his motion to set aside the stipulation of dismissal, even though his motion was made almost 3 years after the stipulation became effective.

The function of this court in reviewing orders involving a fact determination is not to provide a hearing de novo or to substitute its judgment for that of the trial court. The only question for determination here is whether the trial court abused its discretion in refusing to set aside the stipulation for dismissal. If the evidence was legally sufficient to support the order of the trial court approving the compromise and settlement, there was no abuse of discretion.

In Keller v. Wolf, 239 Minn. 397, 58 N. W. (2d) 891, a girl, 23 years of age, who was struck by an automobile, settled her claim for injuries, giving a release and joining in a stipulation of dismissal. Almost 2 months later she moved to set aside the stipulation for settlement on grounds of mistake and improvidence. The court below denied the motion to vacate, and this court affirmed, holding that the evidence was sufficient to support the conclusion that the settlement was provident and that there was no evidence that a mistake had occurred. In that action, as in the instant case, the trial court had taken into account certain factors in evaluating the providence of the settlement, one of which was the probable finding of contributory negligence against the plaintiff. We said (239 Minn. 403, 58 N. W. [2d] 896):

"However, whether a settlement of a claim for damages has been improvidently made is not to be determined by considering only the seriousness of the injuries and the extent of the damages. Plaintiff's likelihood of being able to establish a right of recovery against defendants must also be taken into consideration. As the trial judge said in summarizing the instant situation:

" '* * * They [plaintiff and her father] are apparently led by what they hear on the street—determined that they must have a very large sum in spite of the fact that the element of contributory negligence may bar recovery entirely.'

"Plaintiff's prospects regarding proof of negligence and contributory negligence *must* be considered and evaluated in determining whether a particular settlement is provident. It is defendant's contention that the settlement was provident since plaintiff's right of effecting any recovery at all was doubtful because of evidence of contributory negligence."

Respondents did not labor under any mistake as to appellant's injuries or their extent when negotiating for the settlement of their claims. They had at no time requested any medical examination of appellant. They made no request for information as to his claimed injuries at any time prior to or at the time of settlement. The record clearly indicates that the settlement arrived at among all litigants was reached after full consideration and evaluation of all its features, during the actual trial of one phase of the litigation growing out of the accident.

One year had elapsed between the date of the accident and the time the stipulation was entered into. During this period appellant had legal representation of his own choice. A law firm in Waseca represented appellant for a period of several weeks following the accident. Later Mr. Tschohl of Mankato was retained by appellant as his personal counsel. The record also indicates that prior to the time of commencement of trial appellant had been examined by several doctors, some specialists in their field, and according to his own counsel had substantially recovered from his injuries. His partial blindness in his left eye did not appear until the fall of 1958, three years after the accident. He now asserts that if he had surmised what might later happen to his eyesight he would not have signed the release or joined as he did in the stipulation of dismissal. His attorney at the time, Mr. Tschohl, has also made such a statement.

However, the court below stated in its memorandum attached to the order denying the motion:

"The transcript and the exhibits attached to the file indicate a very strong possibility of a finding on the part of the triers of fact in the above entitled matter of contributory negligence of this plaintiff. Such is further borne out by the settlement made of the other litigation arising out of the accident here involved."

The decision made by all the parties to the litigation, including appellant, was based upon the reasoning of the parties at the time— that the settlement was provident in view of the probable liability because of the circumstances of the accident. The record in effect discloses that appellant was deemed by all of the attorneys acquainted with the facts of the accident, both his own and attorneys for the respondent, to have been not only the primary but quite probably the sole negligent actor causing the accident and the person upon whom liability would descend. The disposition of all the actions by the settlement was viewed at the time as being of real benefit to appellant. It is safe to assume that it was so considered by all the litigants, their counsel, and the presiding judge who had heard the evidence submitted during the course of the trial and to whom the settlement was submitted for approval. Clearly, the analysis of the situation which

appellant presents, based upon conditions found to exist 3 years after the accident occurred, is not that agreed upon by all parties when the settlement was approved.

An analysis of the record can only lead to the conclusion that the settlement is free from mutual mistake as to any and all elements considered at the time. Appellant permitted his claim to be removed from consideration in order that he might settle within the limits of his insurance coverage and thus prevent verdicts being entered against him.

Appellant places reliance on Allison v. Chicago G. W. Ry. Co. 240 Minn. 547, 62 N. W. (2d) 374; and Aronovitch v. Levy, 238 Minn. 237, 56 N. W. (2d) 570, 34 A. L. R. (2d) 1306. We are unable to see how these cases apply to the present facts. In each of them the defendant's doctor had given an opinion as to the nature and extent of the plaintiff's injuries and settlement of the claim was based upon such prognosis. After proof that the prognosis had been in error this court ruled, and properly so, that the releases might be invalidated. But, here, the nature and extent of appellant's injuries were not evaluated or forecast by any doctor engaged by respondents to do so. No one was under any misapprehension as to the terms of the overall settlement. Appellant's counsel, Mr. Tschohl, was present at the time the trial judge conducted a full inquiry into the compromise and settlement.

The trial judge in his memorandum pointed out that the affidavit of an ophthalmologist, submitted in support of his motion, did not connect appellant's present condition to the accident and also that "[t]here is no affidavit or report of any sort attached to the moving papers from the Mayo Clinic at Rochester."

The record is clear that at no time during the negotiations did the litigants or their counsel consider the type of injuries sustained by appellant or the degree, nature, and extent of his injuries, nor did his injuries receive any evaluation.

While appellant has advanced numerous assignments of error as grounds for reversing the order of the court below, he stresses that due to lack of awareness on his part that his injury was critical the stipulation ought to be set aside on the grounds of mutual mistake. Respondents contend that there was no proof below to sustain any finding that

the parties to the settlement were operating under a mutual mistake as to appellant's injuries.

The principle of law is well established by the decisions of this court that the vacation of stipulations is a matter resting largely in the discretion of the trial court and that its action will not be reversed unless it can be shown that the court acted in such an arbitrary manner as to frustrate justice. See, Levine v. Holdahl-Colstad, Inc. 251 Minn. 512, 88 N. W. (2d) 865; Albert v. Edgewater Beach Bldg. Corp. 218 Minn. 20, 25, 15 N. W. (2d) 460, 463; 18 Dunnell, Dig. (3 ed.) § 9005.

In determining whether to grant or deny an application for relief from a stipulation of dismissal based upon compromise and settlement the court must necessarily consider the equities of the parties. The burden of proof lies with appellant to show that there has been a mistake of the kind which would justify a reopening under our decisions or that the settlement was improvident or unconscionable.

The stipulation involved in the present appeal is presumed to be valid and binding and the refusal of the court below to set it aside will be reversed by this court only for abuse of judicial discretion. National Council v. Scheiber, 141 Minn. 41, 169 N. W. 272.

Appellant's contention that he did not receive a substantial benefit in return for his execution of the release and stipulation of dismissal is not persuasive. The record is clear that there was no mistake on the part of the respondents nor any fraud on their part since they were unaware at the time of the settlement that plaintiff had injuries which would not manifest themselves until nearly 3 years later.

This court has held that, although the mistake need not be "mutual" in the sense that both parties are under a similar delusion, there must be concealment or at least knowledge on the part of one party that the other party is laboring under a mistake in order to set aside a release for unilateral mistake. Thus, equity will prevent one party from taking an unconscionable advantage of another's mistake for the purpose of enriching himself at the other's expense. Keller v. Wolf, *supra;* Nadeau v. Maryland Cas. Co. 170 Minn. 326, 112 N. W. 595.

In the instant case appellant released respondents by executing the

stipulation of dismissal in consideration of all claims against him being compromised and settled in order to avoid any excess liability under his policy over and above his insurance coverage.

Furthermore, all parties to the settlement must be presumed to have elected to make it final and binding, whether aftereffects of any injuries would in the future prove to be either more or less serious than anyone anticipated at the time. Richardson v. Chicago, M. & St. P. Ry. Co. 157 Minn. 474, 196 N. W. 643.

The release which appellant signed refers to:

"* * * all claims, demands and right of action whatsoever, which I ever had, which I now have or can have on account of injury or injuries both known and unknown to person, damage to property, loss of services and medical expense sustained by me, or which may hereafter arise in consequence of an accident * * *."

■ Appellant does not contend that he has been misled by representations or by bad faith on the part of respondents. We have heretofore held that to justify rescinding a contract or release on the ground of mutual mistake the mistake must be as to a past or present fact material to the contract. Consequences which will follow in the future from known injuries depend upon so many unknown conditions and contingencies and will vary to such an extent in different individuals that they cannot be known with any degree of certainty. Mistakes which might occur in forecasting such consequences are mistakes of opinion, not of fact, and therefore furnish no sufficient ground for annulling the release. Richardson v. Chicago, M. & St. P. Ry. Co. *supra.*

It is undisputed in the record before us that the other driver was traveling east on a well-traveled road 30 feet wide; that appellant was traveling south on a township road only 18 feet wide; that the intersection where the accident took place was uncontrolled, with a statutory right-of-way in favor of Mrs. Buker. Under the foregoing circumstances a jury might well have been warranted in finding that appellant was solely to blame or that he was guilty of contributory negligence as a proximate cause.

■ Appellant's claim that the settlement was improvidently made must be determined not only by the seriousness of his injuries or by

the extent of his damages, but also in the instant case by his probability of recovery. This is not a case where he contends that the settlement was improvident in the light of any inadequacy of what was paid to him, but is rather a contention, on his part, that the settlement is improvident because of his having given up his cause of action in consideration of respondents' lowering their claims so as to come within his policy limits, all of which was of very real benefit to him. The record indicates that under the facts trial of the cases against appellant might well have resulted in recoveries exceeding the limits of his policy. This probability presents a most compelling reason why appellant, in consideration of being protected against recovery in excess of his policy limits, executed the release and stipulation of dismissal. The release was intended to, and did, discharge the respondents from any and all claims, demands, and rights of action against them. It also included claims for all personal injuries, known or unknown, and the stipulation was agreed upon by counsel for all parties. We think the instant case presents a situation where the parties expressly and unconditionally settled for known and unknown injuries and that the release is therefore incontestable. As we view it, the execution of the release and stipulation was in no wise subject to mutual mistake.[1]

In Wagner v. Myers, 355 Mich. 62, 68, 93 N. W. (2d) 914, 918, the Michigan Supreme Court said:

"* * * The litigant who so asserts to a stipulation freely entered into in open court [that the decree is based upon a mistake of fact] carries a heavy burden of persuasion. Every presumption of judicial care, of professional competence and of decretal stability is against the

---

[1]Avoidance of releases on that ground and others is discussed in Hanson v. Northern States Power Co. 198 Minn. 24, 268 N. W. 642; Richardson v. Chicago, M. & St. P. Ry. Co. 157 Minn. 474, 196 N. W. 643; Mix v. Downing, 176 Minn. 156, 222 N. W. 913; Althoff v. Torrison, 140 Minn. 8, 167 N. W. 119; Nygard v. Minneapolis St. Ry. Co. 147 Minn. 109, 179 N. W. 642; Larson v. Sventek, 211 Minn. 385, 1 N. W. (2d) 608; Aronovitch v. Levy, 238 Minn. 237, 56 N. W. (2d) 570, 34 A. L. R. (2d) 1306; Couillard v. Charles T. Miller Hospital, Inc. 253 Minn. 418, 92 N. W. (2d) 96; Simpson v. Omaha & C. B. St. Ry. Co. 107 Neb. 779, 186 N. W. 1001; Annotation, 71 A. L. R. (2d) 82, note II.

overthrow in the appellate court, of such stipulation and of orders and decrees based thereon."

See, also, Annotation, 161 A. L. R. 1161.

Respondents have given up their right to continue their suits for the full amount of damages claimed in their complaints. To set aside this stipulation would compromise the position of the respondents. Any vacation thereof could only be partial in nature and would leave the respondents bound as to their part of the bargain. See, Gerdtzen v. Cockrell, 50 Minn. 546, 52 N. W. 930; Levine v. Holdahl-Colstad, Inc. *supra.*

■ This court, in considering a stipulation involving dismissal with prejudice, in Favorite v. Minneapolis St. Ry. Co. 253 Minn. 136, 139, 91 N. W. (2d) 459, 462, said:

"* * * Such dismissal with prejudice was binding upon the parties and stood as a bar to the bringing of another action on the same cause, even though the formality of discharging the action had not been entered of record."[2]

We feel impelled to conclude from the record presented on this appeal that the trial court did not abuse its discretion in refusing to set aside the stipulation of settlement. The order of the trial court is affirmed.

Affirmed.

MR. JUSTICE FRANK T. GALLAGHER took no part in the consideration or decision of this case.

MR. JUSTICE ROGOSHESKE, not having been a member of the court at the time of the argument and submission, took no part in the consideration or decision of this case.

---

[2]For an interesting discussion of a stipulation informally approved by the court, see Rogalla v. Rubbelke, 261 Minn. 381, 112 N. W. (2d) 581.