Richard William **CHALMERS**, Appellant,

v.

Robert R. **KANAWYER**, Respondent.

No. CX–95–1936.

Court of Appeals of Minnesota.

March 19, 1996.

Michael C. Snyder, Konstandinos Nicklow, Meshbesher & Spence, Ltd., Minneapolis, for appellant.

John R. Rodenberg, Eric A. Bartsch, Berens, Rodenberg & O'Connor, New Ulm, for respondent.

Considered and decided by SCHUMACHER, P.J., and PARKER and DAVIES, JJ.

## OPINION

PARKER, Judge.

Appellant Richard Chalmers was injured in a head-on automobile accident allegedly caused by respondent Robert Kanawyer. Appellant entered into a purported *Miller–Shugart* agreement with respondent, but the agreement failed to include the owner of the vehicle, who was the named insured under a liability insurance policy covering the car. Based upon his reading of a decision of this court, appellant became convinced that the agreement would not be binding on the insurer in a garnishment action because it was not a valid *Miller–Shugart* agreement. Appellant therefore moved the district court to vacate the settlement agreement (and consent judgment) on the following grounds: (1) lack of consideration; (2) mutual mistake; (3)

frustration of purpose; (4) improvidence; and (5) equity. The district court denied appellant's motion. We affirm.

## FACTS

Appellant Richard Chalmers was severely injured in a head-on collision when a car driven by respondent Richard Kanawyer allegedly crossed the center line of the roadway and ran head-on into Chalmers' car. To date, Chalmers has had many surgeries as a result of the accident, costing in excess of $125,000. The costs of his future surgeries are projected to exceed $225,000.

■ At the time of the accident, Kanawyer was driving a car owned by his father-in-law, Harold Stinson. Chalmers and Kanawyer entered into a purported *Miller–Shugart* agreement [1] for the purpose of allowing Chalmers to bring a garnishment action against Harold Stinson's insurer, State Farm Mutual Automobile Insurance Company (State Farm). The agreement, however, failed to include Harold Stinson, the named insured in the policy. The district court adopted the parties' agreement and entered a consent judgment, which provided:

> Plaintiff Richard W. Chalmers is entitled to judgment against defendant Robert R. Kanawyer, for the sum of [$750,000] upon the condition [that] the plaintiff agrees the judgment may be satisfied only from the liability insurance policies of State Farm Insurance Company. This judgment shall not be satisfiable from, nor shall it be a lien upon any other assets of the defendant Robert R. Kanawyer, nor shall it be a personal judgment against him.[2]

Chalmers then served State Farm with a garnishment summons and complaint. He eventually dismissed his action against State Farm, however, due to his belief that a decision of this court, *Nichols v. Meilahn,* 444 N.W.2d 872 (Minn.App.1989), *review denied*

---

**1.** A *Miller–Shugart* agreement is an agreement in which one party admits liability and consents to having a judgment entered against him on the express condition that the other party will satisfy the judgment only out of proceeds from the first party's insurer instead of proceeding against the first party personally. *See Miller v. Shugart,* 316 N.W.2d 729 (Minn.1982). In *Miller,* the Minnesota Supreme Court held that in the absence of

fraud or collusion, a money judgment confessed to by an insured is binding on the insurer in a garnishment action if the settlement is reasonable and prudent. *Id.* at 734–35.

**2.** After entering the agreement, but before the above order was entered, Kanawyer died from causes unrelated to this action.

(Minn. Nov. 15, 1989), invalidated his garnishment action against State Farm because State Farm's named insured, Harold Stinson, was not a party to the *Miller–Shugart* agreement.

## ISSUES

**I.** Does *Nichols v. Meilahn* preclude Chalmers from bringing a garnishment action against State Farm?

**II.** Did the trial court err in denying Chalmers' motion to vacate the settlement agreement and consent judgment?

## DISCUSSION

 Settlement agreements are contractual in nature and are as binding on the parties as any contract they could make. *See Theis v. Theis,* 271 Minn. 199, 204, 135 N.W.2d 740, 744 (1965).

> [V]acating a stipulation of settlement rests largely within the discretion of the trial court, and the court's action in that regard will not be reversed unless it be shown that the court acted in such an arbitrary manner as to frustrate justice.

*Myers v. Fecker Co.,* 312 Minn. 469, 474, 252 N.W.2d 595, 599 (1977) (citing *Schoenfeld v. Buker,* 262 Minn. 122, 131, 114 N.W.2d 560, 566 (1962)).

### I.

All of Chalmers' five different grounds for vacating his settlement agreement appear to rely on one critical assumption: that the agreement he and Kanawyer entered into is not a valid *Miller–Shugart* agreement because the named insured was not a party to the agreement. Thus, the validity of Chalmers' assumption bears directly on the soundness of his position. Accordingly, we first address the question of whether Chalmers' assumption is well-founded, providing a legitimate basis for vacating his settlement agreement.

In *Miller,* a plaintiff was injured by a vehicle driven by someone other than its owner (the named insured on the applicable policy). *Miller,* 316 N.W.2d at 731–32. The parties, including the injured plaintiff, the driver defendant, and the named insured, entered into an agreement and stipulated to a judgment in which the defendant admitted liability on the condition that the judgment would not be collected from the parties, but solely from applicable insurance. *Id.* at 731. The supreme court held that the agreement was binding on the insurer, provided that it was reasonable and prudent. *Id.* at 735.

 In *Miller,* the agreement at issue provided at least two conduits through which a garnishment action against an insurer could potentially be derived: (1) the allegedly covered/insured driver; and (2) the named insured owner of the vehicle. *Id.* at 732–35. In *Nichols v. Meilahn,* this court analyzed the *Miller* decision and found it critical that

> one of the stipulating defendants was the vehicle owner, who was the named insured on the policy upon which plaintiff hoped to collect and the individual upon whom personal liability would rest if no insurance coverage were provided.

*Nichols v. Meilahn,* 444 N.W.2d 872, 874 (Minn.App.1989). In *Nichols,* as in this case, the named insured was not a stipulating party. The *Nichols* court stated:

> *Miller–Shugart* agreements traditionally have involved a named insured. The involvement of such an individual in the agreement provides, we believe, the necessary conduit through which any ultimate liability of an insurer is determined. We also believe that such involvement was contemplated by the Minnesota Supreme Court in *Miller* when it indicated that a critical question in evaluating a *Miller–Shugart* agreement is "whether the judgment stipulated to by the plaintiff and the defendant insureds is the kind of liability the insurer has agreed under its policy to pay."

*Id.* at 875 (quoting *Miller,* 316 N.W.2d at 732). Although the above language focuses on the absence of the *named* insured, rather than the fact that there was no insured at all in that case, it is the latter circumstance that provides a basis for distinguishing the present case from *Nichols.* The *Nichols* court explicitly stated:

The agreement here between appellant and drivers Meilahn and Lopez involved *no insured.*

*Id.* at 875 (emphasis added). Thus, to the extent that *Nichols* says anything about cases involving an insured, it must be regarded as dictum. Accordingly, the question of whether an insured who is not a named insured may also provide "the necessary conduit through which any ultimate liability of an insurer is determined" is an open question. We do not address this issue, however, because the question was not decided by the district court, and it is not properly before us on this appeal.

Without deciding the issue, however, we do note that Chalmers may have a valid *Miller–Shugart* agreement. As the *Nichols* court itself pointed out,

> a critical question in evaluating a *Miller–Shugart* agreement is "whether the judgment stipulated to by the defendant *insureds* is the kind of liability the insurer has agreed under its policy to pay."

*Id.* at 875 (emphasis supplied) (quoting *Miller,* 316 N.W.2d at 732). Although the coverage issue has not yet been determined, it appears that the liability at issue in this case is indeed arguably the kind of liability that the insurer has agreed to pay.[3] We conclude, therefore, that Chalmers' assumption that his *Miller–Shugart* agreement is invalid because it does not include a named insured finds no direct support under current case law.

## II.

### A. *Consideration*

■■■ Minnesota Courts have long held that "[w]hen there is a lack of consideration, no valid contract is ever formed." *Franklin v. Carpenter,* 309 Minn. 419, 422, 244 N.W.2d 492, 495 (1976). A second long-standing principle in Minnesota is that "a court will not examine the adequacy of consideration as long as something of value has passed between the parties." *Gunhus, Grinnell v. Engelstad,* 413 N.W.2d 148, 153 (Minn.App.

1987), *review denied* (Minn. Nov. 24, 1987) (citing *Estrada v. Hanson,* 215 Minn. 353, 356, 10 N.W.2d 223, 225–26 (1943)).

Chalmers first argues that the attempted *Miller–Shugart* agreement should be vacated on the grounds that it is not supported by consideration. Chalmers argues that there was no consideration because he received nothing of value. As discussed above, however, it has not yet been determined whether the agreement may ultimately provide a basis for garnishment against State Farm. Because we cannot say with any legal certainty that the agreement is worthless, we must reject Chalmers' first argument.

Furthermore, even if the agreement were worthless, there may still be other consideration. The Minnesota Supreme Court has stated:

> Consideration requires the voluntary assumption of an obligation by one party on the condition of an act or forbearance by the other.

*Cady v. Coleman,* 315 N.W.2d 593, 596 (Minn.1982) (citing *Baehr v. Penn–O–Tex Oil Corp.,* 258 Minn. 533, 104 N.W.2d 661 (1960)). Kanawyer undoubtedly assumed the obligation of signing a stipulation, admitting that Chalmers was injured as a result of Kanawyer's negligence, on the condition that Chalmers would forbear proceeding against him personally to recover damages. Kanawyer had no legal obligation to sign such an admission.

■■■ Kanawyer performed his part of the bargain by admitting that his negligence was the direct and proximate cause of Chalmers' injuries. Consideration "may consist of either a benefit accruing to a party or a detriment suffered by another party." *C & D Invs. v. Beaudoin,* 364 N.W.2d 850, 853 (Minn.App.1985), *review denied* (Minn. June 14, 1985) (citing *Estrada,* 215 Minn. at 355, 10 N.W.2d at 225). It "need not pass from the promisee to the promisor to be valid." *C & D Invs.,* 364 N.W.2d at 853 (citing *Clausen & Sons, Inc. v. Theo. Hamm Brewing Co.,* 395 F.2d 388, 390 (8th Cir.1968)). Kanawyer suffered a legal detriment because the admis-

---

**3.** We note that the supreme court, in the foregoing quotations, spoke of "insureds" in the plural, not explicitly limiting its scope to the named insured, and that the district court denied State Farm's motion for summary judgment denying coverage of Kanawyer under Stinson's policy.

sion, which he was not required to make, could have presented significant problems in terms of Kanawyer's future insurability and its associated costs. Thus, while Chalmers may not have received anything of value, Kanawyer gave consideration in the form of the legal detriments he suffered by admitting negligence and causation. *See C & D Investments,* 364 N.W.2d at 853. Although Chalmers does not believe these detriments are substantial, as we have seen, courts will not judge the adequacy of consideration. *See Gunhus,* 413 N.W.2d at 153.

### B. *Mistake*

■ Chalmers next argues that the settlement agreement should be vacated due to a mutual mistake of the parties. "The trial court may in its discretion vacate a settlement on grounds of mutual mistake." *Laidlaw v. Commercial Ins. Co. of Newark,* 255 N.W.2d 807, 813 (Minn.1977) (citing *Schoenfeld v. Buker,* 262 Minn. 122, 114 N.W.2d 560 (1962)).

Chalmers cites *Winter v. Skoglund,* a Minnesota Supreme Court case that held:

A contract may be avoided on the grounds of mutual mistake if the party seeking to avoid the contract did not assume the risk of the mistake.

*Winter v. Skoglund,* 404 N.W.2d 786, 793 (Minn.1987) (citing *Gartner v. Eikill,* 319 N.W.2d 397, 398–99 (Minn.1982); Restatement (Second) Contracts, § 152(1) (1981)). The *Winter* court explained, "[t]hat the mistake be one of law rather than of fact is not significant." *Id.* n. 8 (citing *Gartner,* 319 N.W.2d at 399–400); *see also City of Savage v. Formanek,* 459 N.W.2d 173, 175 (Minn. App.1990) ("Whether a mistake is one of fact or law is not significant when applying the doctrine of mutual mistake.").

*Winter* involved an agreement signed by Winter, Skoglund, and a bank, as trustee for several trusts. *Id.* at 788. Winter and Skoglund agreed to the contract on the assumption that the trusts were bound by the bank's signature. *Id.* at 793. The trial court found that the individual trustees for the trusts had not delegated such authority to the bank, and thus the trusts were not bound. *Id.* The Minnesota Supreme Court held:

Because both Skoglund and Winter assented to the contract on the assumption that the Boyer trusts were already bound and that there was no risk that the trusts were not bound, neither Skoglund nor Winter assumed the risk that the Bank's signature would not bind the trusts.

\* \* \* \* \* \*

Skoglund and Winter were mutually mistaken about a basic assumption that had a material effect on the agreed-upon exchange and neither assumed the risk of mistake. The contract is therefore voidable.

*Id.* (citations omitted).

The first paragraph of the stipulation entered into by Chalmers and Kanawyer states:

1. That the authority for this Stipulation for Settlement is based upon the principles approved in *Miller v. Shugart,* 316 N.W.2d 729 (Minn.1982).

Thus, it appears that neither party assumed the risk that this agreement was an invalid *Miller–Shugart* agreement. Rather, both parties were of the belief that it was a true *Miller–Shugart* agreement.

Kanawyer argues that Chalmers got what he bargained for because he received the right to proceed against State Farm in a garnishment action sooner than he would have been able to do had his claim been adjudicated on the merits at trial and without the risk of trial. But if Chalmers is correct, and his agreement with Kanawyer is not binding on State Farm because it lacks Stinson's agreement, then Chalmers did not gain anything more than he had before he signed the agreement. An invalid right to a garnishment action does not become more valuable simply because it falls short by one party's signature instead of falling short by two.

■ Kanawyer also emphasizes the fact that any time a plaintiff enters into a *Miller–Shugart* agreement, there is a chance that he will end up recovering nothing if the insurance company wins on the issue of coverage. The difference in this case, however, is that in a *Miller–Shugart* agreement, a plaintiff assumes the risk for the coverage issue. *See*

*Miller*, 316 N.W.2d at 734. He or she does not, however, assume the risk that the agreement does not have even the potential of providing a means of recovery because the agreement lacks a necessary party.

Thus, were it certain that this agreement, from its inception, was precluded from being a true *Miller–Shugart* agreement unless it were reformed by adding the named insured, a court might feel required to vacate the agreement on the grounds of mutual mistake. Indeed, one should question the propriety of a legal framework that would countenance the continued existence of such a trap for unwary plaintiffs, leaving accident victims with no means of compensation for injuries that were no fault of their own.

As already discussed, however, the validity of Chalmers' *Miller–Shugart* agreement has not yet been determined. Accordingly, the assumed invalidity cannot serve as grounds for a finding of mutual mistake.

### C. *Other Equitable Grounds*

Chalmers also argues that the settlement agreement should be set aside on the grounds of frustration of purpose, improvidence, and equity. Because all of Chalmers' arguments regarding these grounds are entirely dependent upon the agreement's failure to meet the *Miller–Shugart* requirements, we must also reject these arguments as premature.

### DECISION

Whether *Miller–Shugart* agreements require the agreement of a named insured has not yet been decided by Minnesota courts. Chalmers' garnishment action was voluntarily dismissed without prejudice, thus making Chalmers' plea for an equitable remedy less compelling. In view of these circumstances, we conclude that the trial court's decision must be affirmed.

**Affirmed.**