*This opinion will be unpublished and may not be cited except as provided by Minn. Stat. § 480A.08, subd. 3 (2012).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A14-0508
A14-0577**

Christopher D. Reigel, et al.,
Respondents,

vs.

DPS Properties LLC, et al.,
Defendants,
Stephen V. Buck,
Appellant.

**Filed November 10, 2014
Affirmed
Stauber, Judge**

Hennepin County District Court
File No. 27-CV-10-20351

Stephen E. Yoch, Jon L. Farnsworth, Felhaber Larson, Fenlon & Vogt, P.A., St. Paul, Minnesota (for respondents)

David L. Schulman, Craig Buske, Law Office of David L. Shulman, PLLC, Minneapolis, Minnesota (for appellant)

Considered and decided by Stauber, Presiding Judge; Schellhas, Judge; and Crippen, Judge.[*]

_____

[*] Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to Minn. Const. art. VI, § 10.

UNPUBLISHED OPINION

**STAUBER**, Judge

On appeal from the entry of judgment following an alleged breach of the terms of a settlement agreement, appellant argues that the district court (1) misconstrued the settlement agreement and that a proper reading of the agreement does not allow for an entry of judgment under the circumstances in this case and (2) improperly awarded attorney's fees to respondents based on the terms of the settlement agreement. We affirm.

**FACTS**

Appellant Stephen V. Buck and respondent Christopher D. Reigel were partners in Buckbear, LLC, a business which owns and operates three rental properties. In August 2007, respondent CDR Construction, LLC, a company wholly owned and operated by Reigel, contracted with defendant DPS Properties, LLC, a company owned primarily by Buck, to perform improvements to the rental properties. A contract dispute subsequently arose between Buck and DPS Properties (collectively "appellants"), and Reigel and CDR Construction (collectively "respondents"). But the parties eventually entered into a settlement agreement in an effort to resolve the dispute.

In the summer of 2010, respondents commenced an action against appellants asserting various claims, including a breach of the settlement agreement. The parties then entered into a second settlement agreement in August 2011, which is the subject of this appeal. The terms of the settlement agreement provided for the liquidation of Buckbear's assets. These assets consist of three multi-unit residential properties. One

property is encumbered by a mortgage held by American Home Mortgage (AHM), and the other two properties are encumbered by a mortgage held by Richfield Bloomington Credit Union (RBCU). The combined value of the mortgages is approximately $1.4 million, and respondents' personal liability for the Buckbear debt stemmed from Reigel's personal guarantee of the two mortgages.

Under the terms of the settlement agreement, appellants were required to procure the release of respondents' personal liability on the AHM mortgage. The agreement provided that if the release was not obtained within 18 months, respondents would gain certain additional rights. The settlement agreement provided similar language with respect to the properties encumbered by the RBCU mortgage, but allowed appellants two years to procure release of respondents' liability on the RBCU mortgage.

The settlement agreement also required appellants to execute three "confessions of judgment." Two of the confessions related to respondents' liability for the Buckbear mortgages (hereinafter the "mortgage confessions"), and the third confession related to legal expenses incurred by respondents during and after the litigation involving Buckbear's debt (hereinafter the "fee confession"). The settlement agreement provided that the confessions could only be filed in district court if appellants breached any terms of the agreement. And the agreement further provided that if a confession was filed by respondents "prior to the occurrence of an Event of Default," or was otherwise improperly filed, the confession would be "deemed null, void and of no force or effect" and any remaining obligations under the agreement of the party or parties against whom the improper confession was filed would automatically terminate.

3

On August 14, 2013, two years after the settlement agreement was signed, respondents filed the mortgage confessions in district court and requested that judgment be entered. Respondents also filed an affidavit alleging that the filing of the mortgage confessions was warranted due to appellants' breach of the settlement agreement. The district court subsequently entered an order for judgment against appellants in the amount of $1,388,033.29.

Appellants moved to vacate the judgment alleging that no event of default had occurred and that because respondents filed the mortgage confessions without the occurrence of an event of default the judgment was void. Thus, appellants claimed that their obligations under the settlement agreement terminated. In response, respondents moved to enforce the settlement agreement. Respondents claimed that appellants breached the settlement agreement by: (1) failing to obtain respondents' release from personal liability of Buckbear's debt; (2) increasing respondents' personal liability for Buckbear debt without authorization; (3) using Buckbear funds to pay appellants' personal debts; (4) failing to cooperate by not allowing a sale of Buckbear's assets; and (5) failing to provide respondents with Buckbear documents, information, and assets. Respondents also moved to compel discovery.

On February 4, 2014, the district court filed an order determining that appellants breached the settlement agreement by not relieving respondents of personal liability under the AHM mortgage and the RBCU mortgage within the time provisions set forth in the settlement agreement. The court concluded that, as a result of the breach, respondents properly filed the mortgage confessions, and that it was unnecessary to decide whether

4

appellants' other alleged breaches were valid.  Therefore, the district court granted respondents' motion to enforce the judgment and denied appellants' motion to vacate the judgment.  The district court further ordered appellants to comply with respondents' discovery requests, including post judgment discovery.

After the district court granted respondents' motion to enforce the settlement agreement, respondents filed the fee confession asserting that $86,337.90 represented the amount of respondents' total expenses incurred related to the enforcement of the settlement agreement.  On March 31, 2014, district court entered a supplemental judgment in the amount requested by respondents.  Appellants filed notices of appeal related to both the February 4, 2014 order and the March 31, 2014 order and this court subsequently consolidated the appeals.

## D E C I S I O N

### I.

The rules for vacating a default judgment apply to judgments entered from a confession of judgment.  *Banque Internationale Luxembourg v. Dacatah Cos.*, 413 N.W.2d 850, 853 (Minn. App. 1987).  We review a district court's denial of a motion to vacate a default judgment for an abuse of discretion.  *Foerster v. Folland*, 498 N.W.2d 459, 460 (Minn. 1993).  A district court abuses its discretion when its ruling is based on an erroneous view of the law, is against the facts in the record, or the court exercises its discretion in an arbitrary or capricious manner.  *City of North Oaks v. Sarpal*, 797 N.W.2d 18, 24 (Minn. 2011).

"Settlement agreements are contractual in nature and are as binding on the parties as any contract they could make." *Chalmers v. Kanawyer*, 544 N.W.2d 795, 797 (Minn. App. 1996). Generally, this court reviews a district court's decision regarding a petition to enforce a settlement agreement for an abuse of discretion. *See Johnson v. St. Paul Ins. Cos.*, 305 N.W.2d 571, 573 (Minn. 1981). But because a settlement agreement is contractual in nature, the determination of whether the settlement agreement is an enforceable contract is a question of law that is reviewed de novo. *Mohrenweiser v. Blomer*, 573 N.W.2d 704, 706 (Minn. App. 1988), *review denied* (Minn. Feb. 19, 1998).

Paragraph 3.2(e) of the settlement agreement provides that:

> [Appellants] shall procure the release of [respondents'] personal liability on the AHM Mortgage. If within eighteen (18) months of the execution of this Agreement [appellants are] unable to obtain a release for [respondents] associated with the AHM mortgage so that [respondents] no longer ha[ve] any personal liability for the AHM mortgage or in any way relating to [the encumbered property], then:

> i. [Respondents] shall, without notice to [appellants], be able to immediately take all necessary actions within [respondents'] sole discretion to minimize [respondents'] personal liability for the AHM Mortgage, including but not limited to selling the [encumbered property], and/or reducing liabilities and/or increasing revenue associated with [the encumbered property]; and

> ii. Upon written demand by [respondents], [appellants] shall immediately relinquish all control over Buckbear operations related to [the encumbered property] and the AHM Mortgage as is necessary to effectuate the sale thereof.

6

Paragraph 3.2(f) of the settlement agreement contains virtually identical language with respect to the RBCU mortgage, except that appellants were allowed two years to procure respondents' release from liability for that mortgage.

The settlement agreement also provides that if appellants breached any terms of the settlement agreement, respondents "shall be entitled" to file the mortgage confessions in district court. The agreement then clarifies that the mortgage confessions "may only be filed in the Event of Default." "An Event of Default is triggered" under the agreement

> only if a party: (a) fails to satisfy any material term of this Agreement; (b) fails to make any payments in Paragraph 3; (c) breaches any representation or warranty in this Agreement; or (d) finds that a representation or warranty was materially untrue or incorrect at the time of its making. Any Event of Default and related liability shall only be attributable to party or parties in default.

The district court found that under the settlement agreement, it is "obvious" that respondents' "release is a material term." The district court then found that because respondents' release is a material term, and because it is undisputed that appellants failed to release respondents from liability under the AHM and RBCU mortgages, that appellants' breach of a material term constituted an event of default. Thus, the district court concluded that respondents properly filed the mortgage confessions.

Appellants concede that respondents' release is a material term of the settlement agreement. But appellants argue that the time period to procure respondents' release was not a material term. To support their claim, appellants point to the language of the settlement agreement stating that if appellants are unable to procure respondents' release from the mortgages then respondents "acquired certain additional rights." Appellants

7

argue that because the settlement agreement provided respondents with certain rights in the event that appellants failed to procure respondents' release from liability, rather than specifically stating that the failure to release respondents from liability in the stated time period constituted a default, that the district court erroneously concluded that an event of default occurred.

We disagree. It is well settled that "the term 'shall' reflects a mandatory imposition." *Travertine Corp. v. Lexington-Silverwood*, 683 N.W.2d 267, 272 (Minn. 2004). Here, the settlement agreement provides that appellants "*shall* procure the release of [respondents'] liability" under the AHM and RBCU mortgages within 18 months and two years, respectively, and that if appellants are unable to obtain respondents' release from the mortgages within the stated time periods, respondents "*shall . . .* be able to immediately take *all necessary action* within [respondents'] sole discretion to minimize [their] personal liability" for the mortgages. (Emphasis added.) The plain language of this agreement mandates that appellants procure respondents' release from the mortgages, and that if such release is not obtained within the specified time periods, respondents "shall" be able to take any action to minimize their personal liability. The settlement agreement makes clear that this action includes the filing of the mortgage confessions.

Appellants argue that the "intent of the confessions" as stated in paragraph 7(a) of the settlement agreement demonstrates that appellants' failure to obtain respondents' release from the mortgages within the specified time period is not a breach of a material term because it differentiates between appellants' obligations under paragraphs 3.2(e) and (f) and an "event of default." Specifically, this language provides that

8

> The intent of the [mortgage confessions] is to ensure that to the extent [respondents have] any personal liability for Buckbear debts after the time periods stated in Paragraph 3.2(e) and (f) *or* any Event of Default, that the value of the AHM Confessions shall be equal to the amount of [respondents'] personal liability for the AHM Mortgage and the value of the RBCU Confession be equal to the amount of [respondents'] personal liability for the RBCU Mortgage.

(Emphasis added.)

Appellants argument is without merit. Under the settlement agreement, an "event of default" can be triggered in several ways, including if a party: (1) fails to satisfy any material term of the settlement agreement; (2) fails to make the required payments; (3) breaches any representation or warranty in the agreement; or (4) discovers that any representation or warranty was materially untrue or incorrect at the time it was made. The "or any Event of Default" language clarifies that a party could default on the settlement agreement before appellants procured respondents' release from liability from the mortgages. The language of paragraph 7(a) further clarifies that, if such a default occurred, or if appellants failed to procure the release of respondents' liability from the mortgages within the specified time periods, the amount of the mortgage confessions should be equal to the amount of respondents' remaining personal liability on the mortgages.

Moreover, it is a well-settled axiom of contract law that the "[t]erms in a contract should be read together and harmonized whenever possible." *Burgi v. Eckes*, 354 N.W.2d 514, 518 (Minn. App. 1984). Here, as respondents point out, paragraph 3.2(h) of the settlement agreement "confirms" that appellants' failure to release respondents from

9

personal liability within the specified time periods was a material breach of the agreement. This provision states: "To the extent [appellants] provide[] credible documentation to [respondents] that demonstrates that [respondents have] been released for all of . . . personal liability for Buckbear debts, including but not limited to the Mortgages, then the terms of 3.2(e) and (f) of this Agreement will be deemed satisfied." When paragraph 3.2(h) is read together with paragraphs 3.2(e) and (f), the provisions are harmonized and reflect that the release of respondents' liability from the mortgages within the specified time periods was a material term of the settlement agreement. Appellants do not dispute that they failed to procure respondents' release from liability from the mortgages. Accordingly, the district court did not err by concluding that appellants breached the settlement agreement.

Finally, the settlement agreement provides that respondents were entitled to file the mortgage confessions in district court if appellants "breached any terms" of the settlement agreement. Because we conclude that appellants breached a material term of the settlement agreement by failing to release respondents from liability within the specified time period, we affirm the district court's determination that respondents could file the mortgage confessions in district court.

## II.

Appellants also challenge the district court's order awarding respondents attorney's fees in the amount of $86,337.90 based on the fee confession filed by respondents. The fee confession provides that "[t]he amount in this and other Paragraphs will be completed by counsel for [respondents] and will be filed in conjunction with an

affidavit that confirms the appropriateness of the amount." This language is consistent with Minn. Stat. § 548.22 (2012), which is entitled "Confession of Judgment" and provides in relevant part that:

> A judgment for money due or to become due, or to secure any person against a contingent liability on behalf of the defendant, or for both, may be entered in the district court by confession and without action, upon filing with the court administrator a statement, signed and verified by the defendant, authorizing the entry of judgment for a specified sum.

As respondents point out, the purpose of a confession of judgment is to eliminate the need for motion practice, and the plain language of section 548.22, as well as the fee confession, supports this assertion. Moreover, the fee confession specifically states that appellants "waive[d] any and all objections" to the amount claimed by respondents in the fee confession. And the fee confession further provides that appellants have "read this Confession of Judgment and fully understand[] its force and effect" and "acknowledge[] the right to seek the services of counsel to review this Confession of Judgment." The record reflects that respondents' counsel attached the appropriate affidavit when filing the fee confession. Accordingly, the district court properly awarded attorney's fees in favor of respondents.

**Affirmed.**

11