Herbert A. O'BRIEN, et al., Appellants,

v.

Lillian WENDT, et al., Respondents,

Warren LaPanta, et al., Defendants.

No. 49369.

Supreme Court of Minnesota.

July 3, 1980.

Rehearing Denied Aug. 13, 1980.

Jacobowski, Doffing, Hennessy & Flannery and William J. Hennessy, St. Paul, for appellants.

Smith, Juster, Feikema, Malmon & Haskvitz, Wyman Smith and J. Christopher Cuneo, Minneapolis, for respondents.

Heard before SHERAN, C. J., OTIS and YETKA, JJ., and considered and decided by the court en banc.

YETKA, Justice.

Plaintiffs Herbert A. O'Brien and Christine V. O'Brien appeal from the order of the Cook County District Court filed on February 28, 1978, granting a new trial in the above-captioned case. We reverse the order and remand to the trial court.

On September 16, 1968, plaintiffs, as vendees, entered into a contract for deed with Edward and Anna Ruidl, as vendors, for the purchase of resort property known as Northwoods located in Cook County. After the purchase, the plaintiffs began renovation and operated the property as a resort commencing in June 1970. Difficulties occurred in the operation of the resort, and in April 1973 the Ruidls commenced cancellation proceedings on the contract for deed. As the plaintiffs lived in Chicago, they were unaware of the cancellation proceedings until a friend, Warren LaPanta, informed them that he had seen a notice of foreclosure in a local newspaper. The events which transpired gave rise to the instant action.

LaPanta apparently was interested in becoming a partner in the Northwoods project and plaintiff offered him 50% interest in exchange for $20,000. LaPanta was unable to participate and apparently then contacted defendant Lillian Wendt and involved her in the negotiations. In April and May 1973, there were numerous telephone conversations between the plaintiff Herbert O'Brien in Chicago and Warren LaPanta and Lillian Wendt in Minneapolis. It is the nature of the conversations and the agreement reached which is at issue.

According to the plaintiffs, the parties tentatively agreed that LaPanta and Wendt would acquire a 50% interest in Northwoods in exchange for $20,000. This amount would be used to satisfy the arrearages on the contract for deed and the debts of the resort. O'Brien testified that he gave defendant Wendt, an accountant and licensed real estate broker, a power of attorney to facilitate her investigation of the history and debts of the subject property. He also stated that on May 10, 1973, prior to the expiration of the redemption period, Wendt telephoned him and requested that he execute two quit claim deeds in case it became necessary for her, as a partner, to transfer a portion of the land to raise the necessary funds. O'Brien admitted that he executed a quit claim deed and an assignment of the contract for deed to Wendt and LaPanta but states that those documents contained no precise legal description of the property.

On May 14, 1973, Wendt paid the arrearages on the contract for deed in the amount of $3,430. O'Brien contends that Wendt took the quit claim deed and the assignment of the contract for deed, filed them with the registrar of deeds on July 11, 1973, and thereafter took possession of the prop-

erty and denied that the O'Briens had any interest whatever in Northwoods. O'Brien also stated that Wendt offered him a 300-foot lot which was once a part of Northwoods in satisfaction of any claim that the O'Briens might have but that he rejected the offer. Finally, he claimed that he first discovered that the deed and assignment of the contract for deed had been filed in December 1973, and that when he questioned the defendant, she denied the existence of any partnership.

Defendant Wendt's version is substantially different. She testified that she requested the quit claim deed and the assignment of the contract for deed because there was no specific agreement as to whether a partnership would be formed or whether an actual sale of the plaintiffs' interest would occur. She testified that she paid the arrearages on the contract for deed as well as back taxes and that since May 10, 1973, she has paid all expenses and directed all improvements in connection with the property. Her view of the transaction was that she had purchased the O'Briens' interest in the resort and that she merely offered the 300-foot lakeshore lot to the O'Briens because it became apparent to her that there was some confusion over the terms of the transaction.

The only other critical testimony was that of defendant LaPanta. While the testimony of the O'Briens is directly contrary to that of the other defendants, LaPanta took the position that the parties had agreed to a partnership in April 1973, and that the documents were executed upon the understanding that the plaintiffs would become silent partners and Wendt would operate the resort.

The plaintiffs commenced the instant action to quiet title to the property in their favor, subject only to the outstanding interest of the Ruidls on the contract for deed; to rescind or cancel the quit claim deed and assignment of the contract for deed; to allow compensation to the defendants for the amount of money expended by them for the reduction of arrearages on the Northwoods property in the event the defendants could establish those amounts; to obtain replevin of personal property of the plaintiffs in possession of the defendants; and claiming $10,000 as compensatory damages for the conversion by the defendants of plaintiffs' property, $100,000 as punitive damages, and a reasonable amount as attorneys' fees and costs.

On October 28, 1977, the jury returned its special verdict with interrogatories finding that the defendant Wendt had agreed to enter into a partnership involving the plaintiffs; that the plaintiffs were not entitled to the 300-foot lakeshore lot; that defendant Wendt was guilty of fraud in her dealings with Herbert O'Brien; and that the parties could be reasonably compensated for net improvements and payments made for the benefit of the Northwoods property as follows: Mark Wendt—$2,500, Lillian Wendt—$10,000, and James Holmen—$2,000, and awarding plaintiff $5,000 in punitive damages against Lillian Wendt.

Thereafter, by its order dated February 27, 1978, the district court, on its own motion, ordered a new trial, stating that the inconsistent responses to the interrogatories made it impossible for the court to prepare the proper findings of fact and conclusions of law. This appeal followed.

The issues raised on appeal are:

1. Whether the appeal should be dismissed upon the basis that it was not timely filed or, alternatively, that it was taken from a nonappealable order;

2. Whether the trial court erred in granting the new trial;

3. Whether punitive damages are properly to be recovered in an action for fraud to rescind a contract.

■ Defendants argue that since the notice of appeal was not filed until more than 6 months after the notice of filing of the subject order by the clerk of the district court, it was not timely filed as required by Minn.R.Civ.App.P. 104.01. That rule provides as follows:

An appeal from a judgment may be taken within 90 days after the entry thereof, and from an order *within 30 days*

*after service of written notice of filing thereof by the adverse party.*

(Emphasis added.) While the defendants did not serve a notice of filing, they contend that service of written notice of the filing of the order by the clerk of the court is sufficient. They also argue that since the order for the new trial adversely affected their rights in addition to those of the plaintiffs, it would be difficult to determine which was the adverse party and which had the obligation to serve written notice. We deem it sufficient to note that the defendants were adverse parties to the plaintiffs, and it is irrelevant which parties were "adverse" to the order. Thus, since the defendants did not serve notice of filing of the order upon the plaintiffs, the present appeal is timely. *See, e.g., Olson v. Burt*, 307 Minn. 142, 239 N.W.2d 212 (1976); *Malcolmson v. Goodhue County National Bank*, 198 Minn. 562, 272 N.W. 157 (1936).

■ Defendants next suggest that the order granting a new trial is not appealable as of right. Minn.R.Civ.App.P. 103.03(e) provides as follows:

An appeal may be taken to the Supreme Court:

\* \* \* \* \* \*

(e) From an order refusing a new trial, or from an order granting a new trial if the trial court expressly states therein, or in a memorandum attached thereto, that the order is based exclusively upon errors of law occurring at the trial, and upon no other ground; and the trial court shall specify such errors in its order or memorandum, but upon appeal, such order granting a new trial may be sustained for errors of law prejudicial to respondent other than those specified by the trial court \* \* \*.

While it is not necessary that the trial court employ the exact language of the rule in its order or memorandum, *Weatherhead v. Burau*, 237 Minn. 325, 54 N.W.2d 570 (1952), review is permissible at this stage of the proceedings only if it can be determined that the basis of the order is an error of law occurring at the trial. *Peterson v. Schulte*, 283 Minn. 518, 166 N.W.2d 713 (1969).

From the complete record, we interpret the trial court's action as awarding a new trial on the basis of errors of law and thus the appeal is in order and timely.

■ This brings us to the issue of whether the trial court erred in granting a new trial, and we conclude that it did. We find the jury's findings to be entirely consistent. The jury followed the instructions of the trial court and found that the plaintiffs were defrauded and therefore entitled to return of the property and to punitive damages in the amount of $5,000. They further found in accordance with the instructions of the court that the defendants had made permanent improvements to the property and set the value of those improvements for which defendants under the court's instructions were entitled to reimbursement.

■ The general question of whether a plaintiff can gain rescission of a contract and punitive damages as well need not be addressed since no party objected to the jury instructions on this issue, see Minn.R. Civ.P. 51, and thus those instructions became the law of the case.

The trial court is thus reversed and the cases remanded with instructions to enter judgment pursuant to the jury's verdict with this exception: The parties at oral argument indicated the defendants remain in possession and have made the payments of principal and interest on the original contract between the plaintiffs and the fee-owners, the Ruidls. Ordinarily, possession and use of the property by the defendants would offset any payments made; however, we are not in a position to determine whether those payments have exceeded the reasonable rental value of the property. Since this is an equitable action, the trial court is empowered to fashion such relief as may be required in the event it finds that the payments of principal and interest exceed the fair value of the use of the property during the interim.

Reversed and remanded.

TODD, J., took no part in the consideration or decision of this case.