Orrin F. JACOBS, et al., Respondent,

v.

FARMLAND MUTUAL INSURANCE COMPANY, Appellant.

Orrin F. JACOBS, as Trustee for the Heirs and Next-of-Kin of Michael Gordon Jacobs, Deceased, and Orrin F. Jacobs and Audrey M. Jacobs, Individually, Respondents,

v.

FARMLAND MUTUAL INSURANCE COMPANY, Respondent,

Frank Gentile, Appellant.

Nos. C5-83-2003, C5-84-52.

Court of Appeals of Minnesota.

Aug. 7, 1984.

Richard J. Roberts, Wheaton, for Orrin F. Jacobs.

C. Allen Dosland, Robert J. Murphy, Gislason, Dosland, Hunter & Malecki, New Ulm, for Farmland.

Rufer, Hefte, Pemberton, Schulze, Sorlie, Sefkow & Kershner, Fergus Falls, for Audrey Jacobs.

Bruce E. Sherwood, Michael T. Feichtinger, Quinlivan & Williams, St. Cloud, for Gentile.

Heard, considered, and decided by POPOVICH, C.J., and HUSPENI and NIERENGARTEN, JJ.

## OPINION

HUSPENI, Judge.

Farmland and Gentile are appealing a jury verdict that awarded $100,000 punitive damages to the Jacobses and from a court determination that entitled Gentile to indemnity from Farmland, but denied Gentile attorney's fees. We affirm.

## FACTS

On April 30, 1981, Michael Jacobs was killed when an automobile driven by Marilyn Rairdon collided with his truck. The Rairdon vehicle was insured by Farmland with liability limits of $25,000 per person. Shortly thereafter, Farmland retained Alexandria Adjusting Company which assigned Frank Gentile to investigate the accident.

Gentile concluded that Jacobs had the right-of-way and estimated that Farmland faced potential exposure of $15,000. In the course of his investigation, Gentile had learned from another agent that the Jacobses had lost another son in a car accident in 1979 and that the Jacobses had settled that claim for $4,000. Gentile relayed this information to a claims superintendent with Farmland, who immediately authorized Gentile to settle for $4,000.

That afternoon, seven days after the accident, Gentile went to the Jacobses' farm. He approached Orrin Jacobs, Michael's father, in the farm field and offered $4,000 to settle the claim. He never disclosed the policy limits nor the fact that he considered the claim to be worth $15,000. In fact, he told Jacobs that the claim was evaluated at $4,000. Jacobs brought up the matter of property damage to his truck and its tools worth a total of $1,500. The two agreed to a total settlement of $5,500. Gentile then obtained the consent of Michael's mother, Audrey Jacobs. Farmland subsequently issued a $5,500 check.

Thereafter, the Jacobses brought an action to set aside the release and to recover compensatory and punitive damages. Prior to trial, Farmland moved to sever the issue of compensatory damages involving the possible negligence of Rairdon and Michael Jacobs, from the issue of the settlement's validity involving fraud and other contractual issues. The motion was granted. The parties settled the compensatory damage issue separately. As a result, punitive damages and the validity of the underlying settlement were tried together here because both involved the same underlying facts. At trial, Gentile's attorney characterized the settlement as "very, very, very, very low, exceedingly low." Gentile himself agreed with this assessment. Gentile conceded that he wanted to reach the Jacobses before any lawyer. In fact, the settlement was engineered without attorney intervention and without court approval provided for in Minnesota Statutes § 573.02 (Supp.1983) and Rule 2, Code of Rules for the District Court. Gentile interpreted the $4,000 settlement involving their other son to mean that the Jacobses "were very easy to deal with." An expert

testified that the value of the Jacobses' claim ranged from $50,000 to $65,000.

Prior to instructing the jury, the attorneys met with the judge to discuss the instructions and verdict form. The Jacobses' attorney requested several instructions relating to fraud. Gentile's attorney opposed this, indicating that there was no evidence of fraud. Farmland's attorney took the position that punitive damages were warranted for fraud only when accompanied by malicious conduct or some other factor. Ultimately, the jury was instructed on fraud, but a question specifically dealing with that issue was not submitted.

The jury was to make two decisions: whether to set aside the settlement and whether to award punitive damages. It returned the special verdict as follows:

1. Should the release be set aside on the grounds that it was entered into while Orrin Jacobs and Audrey Jacobs were laboring under mistake?

Yes or No <u>YES</u>

2. Should the release be set aside on grounds that it was improvidently made and in equity and good conscience should not be allowed to stand?

Yes or No <u>YES</u>

3. Did clear and convincing evidence of the acts of defendants show a willful indifference to the rights of others?

Yes or No <u>YES</u>

4. If the answer to Question 3 is yes, what amount, if any, do you award as punitive damages?

<u>$100,000</u>

The court found separately that Gentile was entitled to indemnity from Farmland but that he was not entitled to attorney's fees. On appeal, Farmland raises no objection to the jury determination to set aside the release.

### ISSUES

1. Whether the evidence for punitive damages was clear and convincing that the acts of defendant showed a willful indifference to the rights or safety of others.

2. Whether Gentile was entitled to indemnity from Farmland.

3. Whether Gentile was entitled to attorney's fees from Farmland.

### ANALYSIS

1. The jury was instructed verbatim under the punitive damages statute:

Punitive damages shall be allowed in civil actions only upon clear and convincing evidence that the acts of the defendant show a willful indifference to the rights or safety of others.

Minn.Stat. § 549.20(1) (1982). The jury also was instructed as to fraud:

(under) Minnesota law the elements of fraud are a false representation pertaining to a material past or present fact susceptible to human knowledge.

Knowledge by the person making the representation of its falsity or assertion of it without knowledge of its truth or falsity and intention that the other person act upon it or circumstances justifying the other person in so acting and the other person being in fact reasonably induced to act upon the representation, relying upon it, and suffering damage attributable to the misrepresentation.

 The evidence relating to fraud was clear and convincing. Farmland through Gentile told the Jacobses that the claim was worth $4,000 when it recognized that it was worth much more. While one party to a transaction generally need not disclose material facts to another party, "one who has special knowledge of material facts to which the other party does not have access may have a duty to disclose these facts to the other party." *Richfield Bank and Trust Co. v. Sjogren*, 309 Minn. 362, 365, 244 N.W.2d 648, 650 (1976) (quoting *Klein v. First Edina Nat. Bank*, 293 Minn. 418, 421, 196 N.W.2d 619, 622 (1972). That is the case here. Farmland and Gentile knew Jacobs had settled an earlier claim of similar nature for $4,000. They utilized their superior knowledge of the value of the claim by approaching the Jacobses in an isolated location away from

counsel and the safeguards of court approval per Minnesota Statutes § 573.02 and Code of Rules for the District Court, Rule 2. They further chose a moment when the Jacobses were still vulnerable with grief. Gentile's haste to agree to a property settlement denial of $1,500 without prior approval of Farmland was additional evidence of his recognition of the unfairness of that settlement. The evidence amounts to a fraudulent scheme which reflects willful indifference to the Jacobses.

■ Farmland points out that punitive damages must be accompanied by a tort, *Minnesota-Iowa Television Co. v. Watonwan T.V. Improvement Ass'n.*, 294 N.W.2d 297 (Minn.1980). We agree. Farmland contends that the release and its validity are strictly contractual matters. Farmland argues that inasmuch as an interrogatory relating to fraud was not submitted to the jury, no separate tort was found to exist. We do not agree.

By failing to request that the court submit a question relating to fraud—indeed, by taking a somewhat contrary stance—Farmland and Gentile waived their right to have the jury decide the specific issue of fraud. *Murray v. Walter*, 269 N.W.2d 47 (Minn.1978); *Gravley v. Sea Gull Marine, Inc.*, 269 N.W.2d 896 (Minn.1978). Our rules recognize:

> As to an issue omitted without (a request for submission), the court may make a finding; or, if it fails to do so, it shall be deemed to have made a finding in accord with the judgment on the special verdict.

Minn.R.Civ.P. 49.01(1). The finding of fraud was implicit in the jury's verdict. On the facts of this case, the evidence which satisfies fraud is the same which shows willful indifference to the Jacobses and justifies the award of punitive damages.

We are not asked to address whether the award of punitive damages may be made absent an award of compensatory damages. In any event, the defendants have waived that issue by requesting severance of the issues involving compensatory and punitive damages which otherwise would have been tried together.

■ 2. Under *Hendrickson v. Minnesota Power and Light Co.*, 258 Minn. 368, 104 N.W.2d 843 (1960), a person may seek indemnity who:

> has incurred liability by action at the direction, in the interest of, and in reliance upon the one sought to be charged.

Id. at 372–373, 104 N.W.2d at 848. In this case, Gentile contacted Farmland which, in turn, authorized the $4,000 personal liability settlement. Subsequently, Farmland ratified the $1,500 property settlement and issued a $5,500 check to the Jacobses as a complete settlement. The low amount was in Farmland's, not Gentile's, financial best interests. Under these circumstances, the court's award of indemnity to Gentile was proper.

■ 3. The award of attorney's fees is discretionary. *Peterson v. City of Elk River*, 312 N.W.2d 243 (Minn.1981).

■ The judge based the denial of fees on *Farr v. Armstrong Rubber Co.*, 288 Minn. 83, 179 N.W.2d 64 (1970), indicating that Gentile was defending a separate fraud claim. This rationale appears to be incorrect insofar as the fraud claim that Gentile was defending was the same that Farmland was defending. But we are not bound by the court's rationale in upholding its decision. *Warner v. E.C. Warner Co.*, 226 Minn. 565, 33 N.W.2d 721 (1948). It generally is recognized that fees are not recoverable absent a contractual or statutory mandate. *Grassman v. Minnesota Board of Barber Examiners*, 304 N.W.2d 909 (Minn.1981). There is no such mandate here. Under these circumstances, the denial of fees was appropriate.

### DECISION

The evidence of fraud was clear and convincing, justifying the award of punitive damages. Gentile was entitled to indemnity, but not attorney's fees.

We affirm.