Orrin F. JACOBS, as Trustee for the Heirs and Next-of-Kin of Michael Gordon Jacobs, Deceased, and Orrin F. Jacobs and Audrey M. Jacobs, individually, Respondents,

v.

FARMLAND MUTUAL INSURANCE COMPANY, Petitioner, Appellant,

Frank Gentile, Respondent.

Nos. C5-83-2003, C5-84-52.

Supreme Court of Minnesota.

Nov. 22, 1985.

William A. Moeller, New Ulm, for appellant.

Michael T. Feichtinger, St. Cloud, for Gentile.

Richard S. Roberts, Wheaton, Rufer, Hefte, Pemberton, Schulze, Sorlie, Sefkow & Kershner, Fergus Falls, for Jacobs.

SIMONETT, Justice.

This appeal raises the question whether a jury, in setting aside a release fraudulently obtained by an adjuster, may award punitive damages against the adjuster and his insurance company. We reverse the award for punitive damages but affirm the trial court's ruling granting the adjuster indemnity against his insurance company.

Michael Jacobs, age 20, was killed instantly on April 30, 1981, when his truck collided at an uncontrolled rural intersection with a car driven by Marilyn Rairdon. The Rairdon car was insured by defendant Farmland Mutual Insurance Company with liability limits of $25,000 per person and $50,000 per accident. Farmland assigned defendant Frank Gentile of Alexandria Adjusting Company to the case. Gentile, after his initial investigation and taking into consideration liability factors, the policy limits, and other potential claims, put a value on Michael's death claim of $15,000, and so reported to Farmland. Gentile then learned that Michael's parents had lost another son in an auto accident the previous year and had settled that passenger death claim for $4,000. This suggested to Gentile that Orrin Jacobs, the father, would be "exceedingly easy" to deal with, and, having relayed this further information to Farmland, Gentile was given authority to settle for $4,000.

Seven days after the auto accident, Gentile met with Orrin Jacobs at the Jacobs farm. Gentile offered $4,000 and Jacobs accepted. There was very little discussion. Jacobs said he just "wanted to get rid of him." Jacobs did inquire about the loss of the pickup truck and some tools, and Gentile added $1,500 to the settlement for those items. Mr. Jacobs signed the release, after which Mrs. Jacobs signed also. Gentile was unaware that Mr. Jacobs could not read nor write, but Gentile testified he had explained the release to Mr. Jacobs.

Some 6 months later, the Jacobses were sued by the injured passengers in the Rairdon car, and they then consulted counsel. Thereafter this lawsuit was commenced by Orrin F. Jacobs as Trustee for the heirs and next-of-kin of Michael Gordon Jacobs, deceased, and Orrin F. Jacobs and Audrey M. Jacobs, individually. Named as defendants were Marilyn Rairdon, John Rairdon, Farmland Mutual Insurance Company, and Frank Gentile. Plaintiffs' complaint, as amended, alleged a cause of action by the plaintiff trustee against defendants Marilyn and John Rairdon for the wrongful death of Michael Jacobs, and asked for damages in excess of $50,000. The complaint further alleged that plaintiffs Orrin F. Jacobs and Audrey M. Jacobs had previously signed a release of the death claim for $4,000 "which defendants now seek to assert as a defense"; that the release had been obtained by the fraudulent misrepresentations of defendant Frank Gentile, an insurance adjuster, acting on behalf of the defendant Farmland Mutual Insurance Company; and that the release should be declared void and be set aside. Finally, the complaint asked for punitive damages against defendants Gentile and Farmland

and in favor of plaintiffs Orrin F. Jacobs and Audrey M. Jacobs. Defendants' answers denied liability and asserted the release as an affirmative defense.

On Farmland's motion, the issue of the validity of the release was severed from the wrongful death action and tried first. The jury, by special verdict, found that the release should be set aside because the Jacobses had been "laboring under mistake" and also because the release "was improvidently made and in equity and good conscience should not be allowed to stand." The jury further found that defendants had shown a willful indifference to the rights of others and awarded $100,000 punitive damages. The trial court, adopting the jury's answers as its own findings of fact, ordered judgment to be entered against Gentile and Farmland for $100,000 punitive damages, granted Gentile indemnity against Farmland, and denied Gentile's claim for attorney fees against Farmland. Defendants' post-trial motions, repeating their contentions that punitive damages could not be awarded against them in the absence of a finding of a separate tort, were denied.

Farmland and Gentile appealed to the Minnesota Court of Appeals from the judgment and from the order denying their motions for a new trial on punitive damages. Farmland also appealed the indemnity issue, while Gentile appealed the denial of his claim for attorney fees. The court of appeals affirmed the trial court on all issues. *Jacobs v. Farmland Mutual Insurance Co.*, 352 N.W.2d 803 (Minn.Ct. App.1984). We granted Farmland's petition for further review.

After trial of the rescission action, the trustee's wrongful death action against the Rairdons was settled for $25,000, with Farmland paying its policy limits. The settlement expressly provided that it was without prejudice to the Jacobses' claim for punitive damages against Farmland and Gentile.

The broad issue, as we see it, is: Where one seeks an equitable rescission of a release of an unliquidated tort claim fraudulently obtained by the defendants, rather than actual damages based upon the independent tort of fraud or deceit, may punitive damages be awarded as incidental to the equitable rescission?

Our inquiry begins by placing the underlying fraud question in its proper perspective, and to do so requires analysis of the parties' contentions. In recognition that this dispute centers upon the issue of whether defendants' conduct as found by the jury provides a basis for an award of punitive damages, the parties seem to agree that there must be an accompanying tort before punitive damages will lie. Thus plaintiffs' brief argues that Gentile's conduct "constitutes the tort of fraud." Defendants disagree, but also point out that, in any event, neither the jury nor the trial court made any finding of fraud. Plaintiffs counter that a finding of fraud is implicit in the jury's verdict. The court of appeals agreed with plaintiffs, stating that the evidence which satisfies fraud is the same evidence on which the jury found that defendants were willfully indifferent to the rights of plaintiffs. In addition, the court of appeals held that defendants had waived submission of the fraud issue to the jury by failing to request a special verdict question on the issue. Assuming it was defendants' responsibility to request a fraud question, the record discloses, however, that defendants did make such a request, but the request was opposed by plaintiffs and denied by the trial court.

Plaintiffs argue that under "the special circumstances of this case," defendants had an affirmative duty to disclose to Mr. Jacobs either that the claim had been evaluated at $15,000 or, at least, that $4,000 was an inadequate settlement, and that failure to make such a disclosure was a fraudulent misrepresentation that $4,000 was an adequate settlement. Defendants, on the other hand, contend that there was no fiduciary relationship between the adjuster and the claimants and, therefore, they had no duty to disclose their settlement strategy to the Jacobses. The court of appeals, relying on *Richfield Bank &*

*Trust Co. v. Sjogren,* 309 Minn. 362, 365, 244 N.W.2d 648, 650 (1976), apparently believed Gentile was under a duty to make some kind of disclosure. Defendants also claim there was no misrepresentation of any fact; rather, that, as Gentile put it, "[a] claim is worth what a party is willing to settle for."

These arguments are not dispositive and need not be reached because we view the choice of remedy, *i.e.,* equitable rescission, as determinative. The relief sought was not recovery of monetary damages for the conduct of Gentile and his principal, Farmland, but the rescission of the release of an unliquidated tort claim so that the plaintiffs might proceed as if surrender of the claim had never occurred.

■ Equity will set aside a release and settlement if improvident or unconscionable and will prevent one party from taking an unconscionable advantage of another's mistake. *Schoenfeld v. Buker,* 262 Minn. 122, 131, 114 N.W.2d 560, 566–67 (1962). To establish entitlement to equitable rescission, the plaintiffs of necessity sought to prove that the release was improvident or the product of mistake, misrepresentation, or fraud. The jury, instructed by the trial court in a manner consistent with *Schoenfeld,* found that the release could not, in equity or good conscience, stand. The parties do not dispute this finding and it is the law of the case.

■ We agree that a finding of fraud is implicit in the jury's finding that the release be set aside on the grounds of improvidence, unconscionability, and defendants' willful indifference to the rights of others.[1]

A specific finding of fraud would still have entitled the plaintiffs to only that relief sought—rescission—and no more. We do not think, however, that a showing of willful indifference, by itself, entitles one to an award of punitive damages.

■ Minn.Stat. § 549.20, subd. 1 (1984), provides that punitive damages are allowed "only upon clear and convincing evidence that the acts of the defendant show a willful indifference to the rights or safety of others." This language prescribes a burden of proof for punitive damages and attempts to characterize the kind of conduct required. The statute alone, however, does not entitle one to punitive damages unless certain other prerequisites are satisfied. Our case law suggests that punitive damages may be permitted only where the plaintiff is found entitled to actual or compensatory damages, *Meixner v. Buecksler,* 216 Minn. 586, 591, 13 N.W.2d 754, 757 (1944) (dictum); *Erickson v. Pomerank,* 66 Minn. 376, 69 N.W. 39 (1896), although we have allowed punitive damages without proof of actual damages in actions for defamation per se because of the "intangible harm" inflicted. *Loftsgaarden v. Reiling,* 267 Minn. 181, 183, 126 N.W.2d 154, 155, *cert. denied,* 379 U.S. 845, 85 S.Ct. 31, 13 L.Ed.2d 50 (1964); *Anderson v. Kammeier,* 262 N.W.2d 366, 372 (Minn.1977). Further, if plaintiff's cause of action is for breach of contract, the damages recovered for the breach will not support an award of punitive damages unless the breach also constitutes or is accompanied by an independent tort. *Wild v. Rarig,* 302 Minn. 419, 440, 234 N.W.2d 775, 790 (1975), *cert.*

---

1. We do not think a finding of fraudulent misrepresentation is necessarily implicit in the jury's findings, but fraud is a protean legal concept, assuming many shapes and forms. In this case, Gentile was guilty of overreaching, which is a species of fraud, and the jury implicitly so found. Mr. Jacobs was a simple man, functionally illiterate, and inexperienced. This, combined with his grief, left him vulnerable to a superior negotiator. Gentile was unaware of Mr. Jacob's illiteracy, but, as an experienced adjuster, he could not have been unaware of the man's innate incapacity to negotiate effectively. This is not a case of a hard bargain fairly made

but an unfair bargain unfairly made. Whether or not Gentile and Farmland had any duty to disclose their bargaining position, we do not decide. *See, e.g., Kennedy v. Flo-Tronics, Inc.,* 274 Minn. 327, 331–32, 143 N.W.2d 827, 830 (1966) (discusses the distinction between a conscious misrepresentation of facts clearly susceptible of knowledge and "unconscionable overreaching with respect to the young, the gullible and inexperienced, or the simple and unwary"). It is enough that the defendants owed Mr. Jacobs a duty to bargain fairly and to make Mr. Jacobs a reasonable offer. Everybody agrees a reasonable offer was not made.

*denied,* 424 U.S. 902, 96 S.Ct. 1093, 47 L.Ed.2d 307 (1976). Even if a contract is breached maliciously, punitive damages will not lie unless the maliciousness constitutes an independent tort. *Barr/Nelson, Inc. v. Tonto's, Inc.,* 336 N.W.2d 46, 52–53 (Minn.1983); *Haagenson v. National Farmers Union Property & Casualty Co.,* 277 N.W.2d 648, 652 (Minn.1979); *Moore v. John E. Blomquist, Inc.,* 256 N.W.2d 518 (Minn.1977). Finally, the enactment of section 549.20, subd. 1, in 1978 did not overrule our prior case law prohibiting punitive damages for breach of contract. *Minnesota-Iowa Television v. Watonwan T.V. Improvement Ass'n,* 294 N.W.2d 297, 311 (Minn.1980).

 This is not a breach of contract case. To the contrary, by seeking rescission plaintiffs sought to establish that there was no contract at all. Neither, on the other hand, is this a tort case. Plaintiffs elected not to affirm the contract and sue in deceit for damages. "Damage is an essential element of a cause of action for fraud and deceit and is not merely a consequence flowing from it. * * * Thus, fraud without damage, while it will sustain a cause of action for rescission, will not support one at law for damages." *Dupont v. Haggard,* 235 Minn. 31, 33, 49 N.W.2d 186, 187 (1951). Here, plaintiffs asserted fraud only for the purpose of setting aside the release so as to deprive the negligent tortfeasors of an affirmative defense. Fraud used in this manner is no more an independent tort cause of action than is contributory negligence.

Should we allow punitive damages in an equitable action for rescission of a release for unliquidated damages where there are no actual or compensatory damages?[2] The reason for the actual damages requirement seems to be a reluctance on the part of courts to permit private parties to bring actions solely to levy private fines. 70 Harv.L.Rev. 517, 528–29 (1957). This notion is sometimes expressed by stating that punitive damages are incidental to actual damages, *Claude v. Weaver Construction Co.,* 261 Iowa 1225, 1229, 158 N.W.2d 139, 143 (1968), or that there is no separate cause of action for punitive damages, *B.B. Walker Co. v. Ashland Chemical Co.,* 474 F.Supp. 651, 665 (M.D.N.C.1979), or that there must be an independent tort, *Highland Construction Co. v. Union Pacific R. Co.,* 683 P.2d 1042, 1049 (Utah 1984). To put it another way, to avoid punitive damages being a loose cannon on the legal deck, courts prefer not to allow punitive damages unless the plaintiff has been harmed, and ordinarily the best way to define the harm is to require compensable harm.[3]

This approach encounters difficulty when punitive damages are sought in a rescission action, for ordinarily there are no compensatory damages when the parties are sim-

---

**2.** The court of appeals, noting that the parties had not asked it to address the issue of whether an award of punitive damages could be made absent an award of compensatory damages, went on to say that, in any event, "defendants have waived that issue by requesting severance of the issues involving compensatory and punitive damages which otherwise would have been tried together." We do not think defendants' request for a trial severance constituted any waiver of their position that punitive damages could not be awarded, a position that they have continued to assert at both appellate levels.

Moreover, the waiver theory apparently assumes that any compensatory damages to be awarded against the Rairdons for negligence are the same as compensatory damages that might be awarded against Gentile and Farmland for deceit. An independent tort against one party cannot be used as the basis for punitive damages against another party for a different tort. *See Minnesota-Iowa Television v. Watonwan T.V. Improvement Ass'n,* 294 N.W.2d 297, 310 (Minn.1980) (A, in a suit to enjoin a breach of contract with B, cannot use C's independent tort in inducing the breach as a basis for punitive damages against B).

**3.** Compare the evolution of recovery of damages for intentional infliction of emotional distress from a parasitic type of damages into an independent tort, as described in *Hubbard v. United Press International, Inc.,* 330 N.W.2d 428, 437–39 (Minn.1983). In *Hubbard,* although concerned about the speculative nature and potential for abuse of "distress" damages, we felt, nevertheless, that an independent tort requiring four distinct elements of proof could meet those concerns. We do not think that punitive damages lends itself to independent tort status.

ply restored to the *status quo ante*. Some courts, nevertheless, especially in bargain transactions when there are restitutionary-type expenses recovered, are beginning to allow punitive damages in this situation,[4] while others do not.[5] This is not, however, our case here.

The case before us is distinguishable from those rescission situations in which some courts have allowed an award of punitive damages.[6] When the release here was set aside, plaintiffs were "made whole" not by an award of actual, compensatory damages but by return of their unliquidated tort claim. Even so, although plaintiffs had neither pleaded nor reduced to judgment any actual damages in the rescission action, they had established that they had been damaged by the release in the sense that the $4,000 consideration was inadequate. We do not, however, think this type of contingent damage sufficient to warrant imposition of punitive damages. By seeking rescission, plaintiffs were not interested in recovering the difference between $4,000 and an adequate settlement proposal; rather, they were interested in recovering on their unliquidated tort claim. In this context, whether they had been actually harmed by the release was contingent on the outcome of the wrongful death tort claim against the Rairdons. There is no claim that the release, even though set aside, has somehow impaired plaintiffs' recovery in the wrongful death action. Indeed, as it has turned out, plaintiffs have recovered not just $15,000, the evaluation figure they claim the adjuster deceitfully withheld from them, but $10,000 more.

■ We do not think the extraordinary remedy of punitive damages should be extended to this atypical rescission situation, and it is not unfair here to require plaintiffs to abide by the consequences of their choice of remedies. We hold, therefore, that since plaintiffs have not established the requisite kind of actual or compensatory damages, punitive damages are not recoverable and the judgment for punitive damages is reversed. Farmland has also appealed the ruling that it must indemnify Gentile. We believe indemnity was properly granted and affirm that part of the judgment, since while indemnity is now moot as to punitive damages, it still applies to Gentile's costs and disbursements.

Reversed in part and affirmed in part.

COYNE, J., took no part in the consideration or decision of this case.

SCOTT, Justice (concurring in part, dissenting in part).

I respectfully dissent from the majority's final disposition of the Jacobses' claim of fraudulent inducement. Although I agree with the majority that punitive damages cannot be awarded on a claim for rescission, I believe that the pleadings and record in this case indicate that the plaintiffs alleged an independent claim of fraud in tort on which punitive damages can be awarded. The Jacobses, therefore, should be granted a new trial and allowed to prove a claim of fraud in tort in order to establish punitive damages.

In Count VI of their amended complaint, the Jacobses set forth the specific facts leading up to the signing of the insurance release. They then alleged that:

Defendant Gentile * * * *fraudulently* offered the sum of $4,000.00 in settle-

---

**4.** *E.g., Kennedy v. Thomsen*, 320 N.W.2d 657 (Iowa Ct.App.1982); *Capitol Federal Savings & Loan Ass'n v. Hohman*, 235 Kan. 815, 682 P.2d 1309 (1984); *Fillion v. Troy*, 656 S.W.2d 912 (Tex.Ct.App.1983).

**5.** *E.g., Hubbard v. Superior Court of Maricopa County*, 111 Ariz. 585, 535 P.2d 1302 (1975); *Defeyter v. Riley*, 671 P.2d 995 (Colo.Ct.App. 1983); *Jones v. Spindel*, 239 Ga. 68, 235 S.E.2d 486 (1977); *Adam v. Harris*, 564 S.W.2d 152 (Tex.Civ.App.1978).

**6.** The issue of "whether a plaintiff can gain rescission of a contract and punitive damages as well" was raised in *O'Brien v. Wendt*, 295 N.W.2d 367, 370 (Minn.1980), but not decided because instructions on the issue of punitive damages had been submitted to the jury without objection and, therefore, became the law of the case.

ment for all damages sustained by [the plaintiffs], knowingly and intentionally relying upon the fraudulent misrepresentations of American Family Insurance Company and *fraudulently misrepresenting* the value of the claims arising out of the death of plaintiffs' decedent, and did commit said acts with the intent to induce said plaintiffs to rely upon his * * * *fraudulent misrepresentations* * * * and did thereby induce said plaintiffs to accept such settlement.

(Emphasis added.) The Jacobses asked that the release be declared "null and void," and that the court award plaintiffs punitive damages in the amount of $50,-000.00. To me, the amended complaint sets forth a general claim of fraud, rather than simply a claim of fraud sufficient to sustain only a cause of action for rescission, and the plaintiffs should not be precluded from establishing fraud in tort simply because it was not specifically pleaded. Although it is true that a party must state the *circumstances* constituting fraud with particularity, Minn.R.Civ.P. 9.02, it is unnecessary for a party to allege in a complaint the *type* of fraud he or she is intending to litigate. *See* Minn.R.Civ.P. 8.01. "[A]ll the Rules require is 'a short and plain statement of the claim' that will give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Conley v. Gibson,* 355 U.S. 41, 47, 78 S.Ct. 99, 102–03, 2 L.Ed.2d 80 (1957) (footnote omitted); *see* 1 D. Herr and R. Haydock, Minnesota Practice: Civil Rules Annotated § 8.3, at 174–75 (2 ed. 1985) ("All that is necessary for a claim to be stated sufficiently is for the pleading to give notice of the claim and contain a reference to the occurrence or transaction with enough particularity to permit application of the doctrine of res judicata"). Here, the plaintiffs generally alleged fraud and put defendants on notice that this would be an issue at trial. They did not intend, I believe, to limit their claim of fraud only to that sufficient to support a cause of action for rescission. To so limit the plaintiffs' complaint, as the majority implicitly does by refusing to remand this case for a new

trial, violates the modern rules of notice pleading and restricts the plaintiffs' ability to plead general, rather than specific, allegations.

In addition, the record in this case indicates that the parties were under the assumption that an independent claim of fraud in tort was being litigated. In the discussion regarding requested jury instructions, Gentile's attorney specifically requested a written jury instruction regarding fraud. He then asked the court to verbally instruct the jurors that before punitive damages could be awarded, the jury must find that all the elements of fraud existed. This is in conformity with the law regarding punitive damages. *See Wild v. Rarig,* 302 Minn. 419, 440, 234 N.W.2d 775, 790 (1975), *cert. denied* 424 U.S. 902, 96 S.Ct. 1093, 47 L.Ed.2d 307 (1976). While Farmland's attorney objected to the submission of both the claim of fraud and punitive damages, he requested that if such claims were submitted there should first be a finding on the question of fraud and then a finding on the question of punitive damages. Similarly, the Jacobses' attorney merely objected to the form of the instruction and not to its submission. This discussion indicates that the parties assumed that a claim of fraud in tort was being litigated.

There is also a question in this case of whether the plaintiffs can establish a claim of fraud in tort and whether further compensatory damages exist that can be the basis of a claim for punitive damages. Although I, too, have doubts about whether these claims can be established, I do not believe that it is this court's duty to determine these questions of fact for the plaintiffs. Our scope of review is narrow for questions of fact determined by either a jury or the trial court. *See, e.g., City of Minnetonka v. Carlson,* 298 N.W.2d 763 (Minn.1980) (scope of review for questions of fact determined by a trial court); *Sandhofer v. Abbott-Northwestern Hospital,* 283 N.W.2d 362 (Minn.1979) (scope of review for questions of fact determined by a jury). We would be violating this review standard by making assumptions as to

whether the plaintiffs can establish a claim of fraud or further compensatory damages in this case. Therefore, "[the plaintiffs] should be allowed to establish, if they can," a claim of fraudulent inducement under tort law. *Doerr v. Clayson*, 375 N.W.2d 488, 490–91 (Minn.1985).

For the above-stated reasons, I dissent from that part of the majority's opinion that disposes of the Jacobses' claim of fraudulent inducement without remanding it to the trial court for further proceedings.