Robert CARLSON, Respondent,

v.

Sam ESTES, et al., defendants and third-party plaintiffs, Appellants,

Lois STANLEY, Defendant,

v.

BONANZA VALLEY STATE BANK, et al., third-party defendants, Respondents.

No. C9–90–189.

Court of Appeals of Minnesota.

July 3, 1990.

J. Brian O'Leary, O'Leary & Moritz, Springfield, for Robert Carlson, respondent.

Charles A. Cox, III and Charles A. Cox, Cox & Goudy, Minneapolis, for Sam Estes, et al., defendants and third-party plaintiffs, appellants.

Thomas P. Melloy, Hall, Byers, Hanson, Steil & Weinberger, St. Cloud, for Bonanza Valley State Bank, et al., third-party defendants, respondents.

Considered and decided by FOLEY, P.J., and KALITOWSKI and SCHUMACHER, JJ.

## OPINION

KALITOWSKI, Judge.

Appellants challenge the trial court's dismissal of Counts I, II, III, IV, V and VII of their third-party complaint for failure to state a claim for which relief can be granted under Minn.R.Civ.P. 12.02(5).

## FACTS

The only question for our review in examining a dismissal of a complaint for failure to state a claim upon which relief can be granted is whether the complaint sets forth a legally sufficient claim for relief; it is immaterial whether or not the party against whom dismissal is sought can prove any of the facts alleged. *Royal Realty Co. v. Leven*, 244 Minn. 288, 290, 69 N.W.2d 667, 670 (1955). Thus, the following facts are assumed to be true for purposes of this appeal and are not binding upon the trial court in further proceedings.

From 1977 until the fall of 1988, Bonanza Valley State Bank financed Samuel Estes' used car business through floor plan financing. During this period, the bank regularly covered overdrafts. Appellants Samuel and Jean Estes also had personal loans through the bank.

In June 1986, appellants reduced their indebtedness to the bank by transferring their house and a car lot in Belgrade, Minnesota, to the bank. The $55,356.12 note was secured by Samuel Estes' automobile inventory. In September 1987, appellants borrowed money from the bank to repurchase their home. At the same time, appellants borrowed $14,000 and gave the bank a mortgage on two other lots in Belgrade.

Appellants were owners of 200 acres in Kandiyohi County. In late 1987 the bank and appellants agreed that if the bank loaned appellants funds to satisfy an FmHA mortgage on the Kandiyohi property, appellants would execute a mortgage in favor of the bank on the Kandiyohi property. On December 17, 1987, the bank sent a letter to FmHA indicating it would pay off the mortgage if the principal balance was reduced to $35,800.

On December 21, 1987, appellants borrowed an additional $11,282.23. This loan was consolidated with the June 1986 note and the September 1987 note. Samuel Estes' inventory and another mortgage on the two Belgrade lots served as collateral. The mortgage also included the Kandiyohi property. Appellants were told by the bank the mortgage would be recorded in Kandiyohi County only if the bank paid off the FmHA mortgage. In addition to the mortgage, appellants signed a "real estate mortgage collateral agreement."

The bank recorded the mortgage on the Belgrade lots immediately in Stearns County. The bank recorded the mortgage on the Kandiyohi property in March 1988 without informing appellants. In the summer of 1988, Samuel Estes borrowed funds from his sister and paid the FmHA mortgage on the Kandiyohi property in full. Appellants were still unaware that the bank had filed the mortgage.

In September 1988 appellants agreed to sell the Kandiyohi property to Robert Carlson. As part of the transaction, appellants warranted that title to the property was clear of encumbrances. Appellants allege they orally agreed to apply $25,000 of the sale proceeds to the indebtedness at the bank and pay 3% interest on the remaining balance. In return, the bank would release the mortgages on the Belgrade lots.

Appellants tendered $25,000 from the sale to the bank. The bank refused to accept the payment and informed appellants the interest rate on the loan was 9.5% and that it would not release the Belgrade property. Additionally, the bank informed appellants the Kandiyohi mortgage had been filed.

Carlson commenced an action against appellants for breach of warranty of clear title after learning of the bank's mortgage on the property. Appellants filed a third-party complaint against the bank and Martin Gjerde alleging, among other things,

fraud, breach of contract, and slander of title to the Kandiyohi property. The bank moved to dismiss appellants' complaint under Minn.R.Civ.P. 12.02 for failure to state a claim upon which relief can be granted. The trial court granted the motion, finding appellants' claims were based on oral credit agreements and were barred by Minn.Stat. § 513.33 (1988). The Esteses appeal.

## ISSUE

Does Minn.Stat. § 513.33 (1988) bar the claims set forth in appellants' third-party complaint?

## ANALYSIS

The trial court granted the bank's rule 12.02 motion to dismiss for failure to state a claim upon which relief can be granted. Minn.R.Civ.P. 12.02(e). In addition to the pleadings, the trial court had the mortgage, promissory note, and mortgage collateral agreement as well as a subsequent promissory note before it at the time of the final order. However, neither affidavits nor other supporting documents were submitted to the trial court at the time of hearing. Thus, although in its order the trial court refers to summary judgment it is clear the parties did not treat this as a summary judgment. Therefore, for purposes of our review, we accept the trial court's characterization of its decision as one for dismissal for failure to state a claim for which relief can be granted under rule 12.02(e).

When reviewing a dismissal for failure to state a claim, our scope of review is narrow. In *Elzie v. Commissioner of Public Safety* the supreme court stated:

The only question before us is whether the complaint sets forth a legally sufficient claim for relief. It is immaterial to our consideration here whether or not the plaintiff can prove the facts alleged.

298 N.W.2d 29, 32 (Minn.1980) (quoting *Royal Realty Co. v. Levin*, 244 Minn. 288, 290, 69 N.W.2d 667, 670 (1955)). We therefore accept as true all facts in appellants' complaint and examine the documents which were before the trial court solely to determine the suitability of dismissal pursuant to Minn.Stat. § 513.33.

Appellants argue their claims are not foreclosed by application of Minn.Stat. § 513.33 (1988). The statute, in relevant part, provides:

**Subdivision 1. Definitions.** For the purposes of this section, the following terms have the meanings given them:

(1) "credit agreement" means an agreement to lend or forbear repayment of money, goods, or things in action, to otherwise extend credit, or to make any other financial accommodation;

(2) "creditor" means a person who extends credit under a credit agreement with a debtor; and

(3) "debtor" means a person who obtains credit or seeks a credit agreement with a creditor or who owes money to a creditor.

**Subd. 2. Credit agreements to be in writing.** A debtor may not maintain an action on a credit agreement unless the agreement is in writing, expresses consideration, sets forth the relevant terms and conditions, and is signed by the creditor and the debtor.

The trial court found that Minn.Stat. § 513.33 prohibited appellants' claims relating to the Kandiyohi property, the bank's failure to continue honoring overdrafts, alleged improper withdrawal of credit, and alleged changes in the terms of repayment. We analyze each of these issues in turn.

### 1. *Kandiyohi Property*

In Counts II, III and V of their third-party complaint, appellants asserted three causes of action resulting from the bank recording the mortgage in Kandiyohi County. These included breach of the agreement not to record the mortgage, fraud by filing the mortgage, and slander of the property title.

Each of the actions arises from the asserted agreement between the bank and appellants not to record the mortgage on the property in Kandiyohi County unless the bank paid off the preexisting FmHA mortgage. The bank did not advance funds to pay off the FmHA mortgage but did record the mortgage in Kandiyohi County. The bank argues that the alleged

oral promise to refrain from recording the mortgage was a credit agreement within the definition of Minn.Stat. § 513.33 and therefore any action based on the promise is precluded by the statute.

■ The parties executed the mortgage in question on December 21, 1987. As a part of the same transaction, the parties also executed a promissory note and a mortgage collateral agreement. Documents executed at the same time pertaining to the same transaction are to be considered together. *Anderson v. Kammeier*, 262 N.W.2d 366, 370 n. 2 (Minn.1977); *Farrell v. Johnson*, 442 N.W.2d 805, 806 (Minn.App.1989). Appellants allege that the oral promise to refrain from recording the mortgage in Kandiyohi County was made at the same time. We find that the three written agreements executed on December 21, 1987, constitute a credit agreement within the definition of Minn.Stat. § 513.33, subd. 1(1). Thus appellants' claims arise from the alleged promise in conjunction with the written documents and are not precluded by Minn.Stat. § 513.33, subd. 2.

■ The trial court erred in determining the oral promise not to record the mortgage was itself an oral credit agreement. The promise is an integral part of the entire credit agreement evidenced by the three writings. Testimony as to the promise is extrinsic evidence regarding the meaning of the writings and the intent of the parties. The parol evidence rule excludes evidence of prior or contemporaneous discussions which varies or contradicts the plain terms of the agreement. *Material Movers, Inc. v. Hill*, 316 N.W.2d 13, 17 (Minn.1982). Parol evidence is admissible, however, when the written agreement is incomplete or ambiguous to explain the meaning of its terms. *Flynn v. Sawyer*, 272 N.W.2d 904, 908 (Minn.1978); *see also Fronning v. Blume*, 429 N.W.2d 310, 313 (Minn.App.1988) (parol evidence is admissible to establish that, because of fraudulent misrepresentations, no enforceable contract was made), *pet. for rev. denied* (Minn. Nov. 30, 1988).

We find that the oral promise not to record the mortgage in Kandiyohi County is not, by itself, a credit agreement within the terms of Minn.Stat. § 513.33. The promise does not concern the actual extension of credit or any financial accommodation, but relates to an action which may be taken if the condition precedent is met. Although the written documents specify that the mortgage is to be recorded in Stearns County, they are silent as to the parties' intent to record the mortgage in Kandiyohi County even though the mortgage covers property in both counties.

The determination whether ambiguity exists is a question of law for the court. *Blackburn, Nickels & Smith, Inc. v. Erickson*, 366 N.W.2d 640, 643 (Minn.App. 1985), *pet. for rev. denied* (Minn. June 24, 1985). However, where ambiguity is found, construction of the agreement utilizing extrinsic evidence is a question for the jury unless such evidence is conclusive. *Id.* We therefore reverse the dismissal of Counts II, III and V of the complaint and remand for a determination as to whether the three documents, taken as a whole, are ambiguous as to the intent to record the mortgage in Kandiyohi County. If the trial court finds that an ambiguity exists, extrinsic evidence on the alleged promise to refrain from recording the mortgage is admissible.

**2.** *Failure to Honor Overdrafts*

■ Count I of appellants' complaint alleges the bank breached its contract by failing to continue honoring overdrafts. Appellants allege the bank, from 1977 to 1988, financed the car sales business through floor plan financing and by covering overdrafts on an ongoing, regular basis. The trial court held an agreement to honor overdrafts would be an important term of the contract and the extension of credit itself, and parol evidence regarding an oral agreement would be barred by Minn.Stat. § 513.33.

None of the documents which might evidence a written agreement to honor overdrafts were before the trial court. Such documents may include the floor-plan fi-

nancing agreement, checking account documentation, checks or bank records. If such written agreements exist, Minn.Stat. § 513.33 does not bar an action for breach of the agreements. Without knowing whether such written documents exist, we cannot agree this claim is foreclosed by Minn.Stat. § 513.33. Because a rule 12.02 motion requires that all allegations in the complaint be taken as true, we take as true appellants' assertion that the agreements were written. Therefore, we find the trial court erred in granting the bank's motion to dismiss Count I for failure to state a claim. Upon remand in a summary proceeding or trial, the trial court should review all relevant documents to determine whether the parties agreed to the coverage of overdrafts so as to prohibit the bank from unilaterally discontinuing the practice.

### 3. *Improper Withdrawal of Credit*

■ Count VII of appellants' third-party complaint alleges that the bank withdrew credit in violation of the financing agreements. The trial court dismissed this claim pursuant to Minn.Stat. § 513.33. Because the record on appeal indicates that numerous written financing agreements were executed by the parties in the time period leading to the withdrawal of credit, Count VII should not have been dismissed under rule 12.02 for failure to comply with Minn. Stat. § 513.33.

■ Appellants claim that Sam Estes' automobile business was damaged by the bank's withdrawal of credit in violation of the parties' agreements. Whether a breach actually occurred will be determined by the terms of the contract. Minn.Stat. § 513.33 does not prohibit an action for breach of a written contract or credit agreement. However, we note that the inapplicability of section 513.33 does not suggest that appellants will prevail on this issue. In a summary proceeding or trial, appellants must show that the bank violated the terms of a written agreement.

### 4. *Change in Terms of Repayment*

■ Count IV of the appellants' complaint alleges that the bank breached an agreement to accept $25,000 of the proceeds from the sale of the Kandiyohi property and repayment of the balance at 3% interest. Appellants concede that this agreement was oral. An oral agreement to lower the interest rate on the loan balance to 3% is clearly a credit agreement within the definition of Minn.Stat. § 513.33. Under such an agreement, the bank would be waiving a claim to the monetary value of the higher interest rate over the term of the loan. This is essentially an agreement to forbear repayment of money and clearly constitutes a financial accommodation.

An oral agreement to change the interest rate charged on a loan goes to the essence of the financial relationship between the parties. Such an agreement is distinguishable from the oral agreement to refrain from recording the mortgage in Kandiyohi County which did not incorporate the terms of the financial relationship between the parties. We therefore find this cause of action is barred by Minn.Stat. § 513.33, subd. 2 and Count IV was properly dismissed by the trial court. We also find appellants' request for equitable relief is not appropriate on this claim as the bank does not seek to capitalize on any wrong by asserting its legal rights but merely seeks to enforce the interest rate agreed to by both parties in a written document.

### DECISION

The dismissal of Count IV is affirmed. The dismissal of Counts I, II, III, V and VII is reversed and this matter is remanded for further proceedings consistent with this opinion.

Affirmed in part, reversed in part and remanded.