RURAL AMERICAN BANK OF
GREENWALD, Respondent,

v.

Ben HERICKHOFF, Appellant,

Anna Herickhoff, et al., Defendants.

Ben HERICKHOFF, defendant and
third party plaintiff, Appellant,

v.

Mark HERICKHOFF, third party
defendant, Appellant.

No. CX–90–2341.

Court of Appeals of Minnesota.

Aug. 6, 1991.

Review Granted Sept. 25, 1991.

Laura J. Hein, Maclay R. Hyde, Gray, Plant, Mooty, Mooty & Bennett, P.A., Minneapolis, for respondent.

Michael D. Miller, Cousineau, McGuire & Anderson, Chartered, Minneapolis, for Ben Herickhoff.

Scott B. Lundquist, Lundquist & Roth, Minneapolis, for Mark Herickhoff.

Considered and decided by FORSBERG, P.J., and FOLEY and CRIPPEN, JJ.

## OPINION

CRIPPEN, Judge.

The trial court granted judgment for respondent Rural American Bank of Greenwald following a special jury verdict favoring appellant Ben Herickhoff. The trial court concluded that Minn.Stat. § 513.33 (1988), the statute requiring credit agreements to be in writing, barred a breach of contract defense based on respondent's breach of an agreement to first apply proceeds from farm operations to appellant Ben Herickhoff's loan before applying them to the loan of appellants Mark and Donna Herickoff.

## FACTS

Appellant Ben Herickhoff is a retired farmer. His son and daughter-in-law, appellants Mark and Donna Herickhoff, operate the Herickhoff family farm once farmed by Ben.

Throughout the 1980s, Mark and Donna received loans to finance their farming operation from the State Bank of Greenwald, the predecessor to respondent Rural American State Bank of Greenwald. In 1986, Mark and Donna needed more than the bank's $175,000 lending limit. To allow Mark and Donna to exceed the limit, Ben agreed to borrow $175,000 from the bank to be used to finance the farming operation.

Bank officials told Ben that the proceeds from the farming operation would first be

used to pay off his loan and only after his loan was paid off would the proceeds be used to pay off Mark's and Donna's loan. This assurance also was contained in a document typed by bank vice-president Doug Winter. This document was typed on bank letterhead and was signed by Mark and Donna Herickhoff.

In 1987, proceeds from the farming operation were used to completely pay off Mark's and Donna's loan. Meanwhile, Ben's loan balance remained at $175,000.

Respondent sued Ben for repayment. Ben claimed breach of contract and fraud. The jury returned a special verdict, finding that respondent breached the loan agreement. Responding to appellants' alternative claim, the jury found that respondent did not fraudulently induce Ben to enter into the loan agreement. After the jury verdict, the trial court granted "summary judgment" for respondent, finding that the loan agreement was not enforceable under Minn.Stat. § 513.33, subd. 2 (1988), which requires a "credit agreement" to be in writing.[1]

## ISSUE

Does Minn.Stat. § 513.33 (1988) bar appellants' breach of contract defense?

**1.** The trial court judgment was in response to respondent's "directed verdict" motion immediately before trial began, premised on Minn.Stat. § 513.33. Two weeks before trial, respondent's complaint was amended to assert rights under this statute. The pretrial motion was taken under advisement by the trial court and decided as a "summary judgment" after the jury verdict. The motion and the trial court's judgment were premised on matters of law, and we need not explore whether they were properly considered under a directed verdict or summary judgment motion.

We observe that during the course of trial, appellants also claimed the agreement to pay off Ben's loan first should be enforced under the doctrine of promissory estoppel. Because the trial court asked the jury to assume the agreement was a valid contract, the court did not allow the jury to consider the estoppel issue. After the jury verdict, the trial court concluded that the contract was unenforceable under Minn.Stat. § 513.33. The trial court erred in ruling that the contract was unenforceable after asking the jury to assume that the contract was valid. Jury instructions, if not objected to, be-

## ANALYSIS

Section 513.33, subdivision 2 states:

A debtor may not maintain an action on a credit agreement unless the agreement is in writing, expresses consideration, sets forth the relevant terms and conditions, and is signed by the creditor and the debtor.

Subdivision 1(1) describes a credit agreement as:

an agreement to lend or forbear repayment of money, goods, or things in action, to otherwise extend credit, or to make any financial accomodation.

The trial court found that the agreement to pay Ben's loan first was a credit agreement that ran afoul of section 513.33 because it was not confirmed by a properly executed written document. We conclude to the contrary that an agreement to apply farm proceeds to one loan before another is not an agreement to lend or forbear repayment of money nor an agreement to extend credit.

The agreement to pay Ben's loan first was also not the type of "financial accomodation" envisioned by the statute. In construing the statute, "[g]eneral words are construed to be restricted in their meaning by preceding particular words." Minn.

come the law of the case. *O'Brien v. Wendt,* 295 N.W.2d 367, 370 (Minn.1980).

The trial court's post-trial ruling had two consequences. First, the court mistakenly eliminated a possibly valid promissory estoppel defense. *See Del Hayes & Sons, Inc. v. Mitchell,* 304 Minn. 275, 284–85, 230 N.W.2d 588, 594 (1975) (promissory estoppel may be used to remove an oral contract from the statute of frauds). Second, because the jury found that respondent breached the contract, the validity of the fraud verdict was thrown into question. Because breach of contract and fraud were alternative claims, once the jury found breach of contract, their decision on fraudulent inducement became irrelevant. Thus, we cannot conclude, as respondent contends, that the fraud issue already has been determined against appellants. Likewise, the process employed by the trial court constitutes one of several bases for rejecting respondent's argument that an estoppel claim is barred by the jury's verdict that the contract was not fraudulently induced. Because we reinstate the jury's contract verdict, we need not further explore the fraud or promissory estoppel allegations.

Stat. § 645.08(3) (1988). Here, the meaning of the general phrase "any financial accomodation" is restricted by the preceding particular phrases "agreement to lend or forbear repayment of money" and "agreement * * * to otherwise extend credit." The phrase does not expand application of the statute to all agreements favoring the debtor. Rather, the phrase "any financial accomodation" must be interpreted to mean a financial accomodation in the nature of lending or forbearance agreement or some other agreement for extension of credit. Here, the agreement was not a lending agreement, a forbearance agreement, or an extension of credit. *See Carlson v. Estes*, 458 N.W.2d 123, 127 (Minn.App.1990) (although an underlying mortgage agreement is a credit agreement within the definition of section 513.33, subdivision 1(1), a promise not to record the mortgage, because it is not an extension of credit nor any other financial accomodation, is not a credit agreement).[2]

This interpretation of the statute is supported by its legislative history. The legislation was intended to regulate only those agreements extending credit or promising repayment or forbearance. When S.F. 1067, the bill that eventually became section 513.33, was introduced on the Senate floor, its author, Senator Randolph Peterson, described it as an effort to prevent borrowers from using an ongoing lending relationship with a lender to enforce unwritten agreements for future loans. Comments of Sen. Peterson, Senate Committee of the Whole, May 6, 1985 (tape). This purpose is not served by applying section 513.33 to agreements, like the one here, that address the rights and obligations of the parties under a completed loan transaction.

This construction of the statute is further compelled by its language on remedies. The statute applies only to actions brought by the debtor to enforce a loan agreement. Subdivision 2 states that "[a] debtor may not maintain an action on a credit agreement unless the agreement is in writing." This language is fitting for a debtor's claim to enforce extension of credit. Here, the creditor has brought the action, and the debtor asserts his agreement to support a claim that the creditor erred in handling repayment of a loan.

Because we hold that section 513.33 does not apply here, we need not decide whether respondent's letterhead was sufficient to satisfy the statute's signing requirement nor whether respondent could be required to comply with an agreement it did not sign. We also need not decide whether Ben Herickoff's signature on the written agreement was needed to fully comply with the statute.

## DECISION

We reverse the trial court's post-verdict judgment in favor of respondent and order reinstatement of the jury's verdict.

Reversed.

FORSBERG, Judge (dissenting):

I respectfully dissent. The majority takes the position that the agreement by the Bank to pay off appellant's loan ahead of his son's loan is not a credit agreement within the meaning of Minn.Stat. § 513.33 (a position not even argued by appellant). Minn.Stat. § 513.33, subd. 1(1) (1988) defines a "credit agreement" as

> an agreement to lend or forbear repayment of money, goods, or things in action, to otherwise extend credit, or to make any other financial accommodation.

The statute further provides:

> A debtor may not maintain an action on a credit agreement unless the agreement is in writing, expresses consideration, sets forth the relevant terms and conditions, and is signed by the creditor and the debtor.

Minn.Stat. § 513.33, subd. 2 (1988). It would seem that the agreement in question

---

**2.** In *Carlson*, the question was raised whether the agreement not to record the mortgage, although not a credit agreement, might be barred as evidence under the parol evidence rule. *Carlson*, 458 N.W.2d at 127. Neither party raised a parol evidence issue here, and we decline to address this question.

is an attempt to make a "financial accommodation."